UNITED STATES of America

v.

Donald L. WOODRUFF, a/k/a Chips.

Crim. No. 74-58.

United States District Court,
E. D. Pennsylvania.

Nov. 6, 1974.

David J. McKeon, Phila. Strike Force Dept. of Justice, Philadelphia, Pa., for plaintiff.

Thomas C. Carroll, Defender Ass'n, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

In this case, defendant Woodruff, who was free on bail pending trial of this matter, did not appear for trial. The government, which intends to seek an indictment against this defendant on charges of bail jumping, in violation of 18 U.S.C.A. § 3150, has requested this Court to order the public defender who represented this defendant to respond to the questions put to him by the government relating to whether or not he advised his client as to the time and place of the trial in this matter and further as to whether or not his client responded and acknowledged that he understood the time and place of the trial.

Defense counsel agrees that the procedure by which this motion has been brought is valid and that the Court should act on the basis of the merits of the dispute so that the sole question before us is whether counsel is obligated to furnish this type of information when properly requested by the government. The essence of the question is whether the compelled disclosure which is sought will violate the attorney-client privilege. We grant the government's motion.

There is no doubt that the purpose of this rule is to promote the freedom of consultation of legal advisers by clients. We set out Judge Wyzanski's statement of the privilege.

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which his attorney was informed (a) by his

client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358–59 (D. Mass.1950).

The only basis upon which the communications here may be held to be outside of the privilege is that of subject matter. The communications here were not made with the purpose of securing legal advice or assistance with respect to the legal problem of the defendant. Moreover, the nature of the communications are such that the information is not incidental to or intertwined with the legal problem of the defendant. Finally, the form of the questions and the nature of the communications together insure that privileged communications will not be drawn within their scope.

Two Circuit Courts have held that there is no breach of the attorney-client privilege in permitting a defendant's former counsel to testify that he had informed the defendant of the necessity of his appearance at a court proceeding and the time thereof. Both these cases involved prosecutions for violations of the statute under which the government intends to proceed against the present defendant. Both courts noted: that it is the duty of counsel to relay such instructions as an officer of the court; that, in this regard, defense counsel merely served as a conduit for the transmission of a message; and that, the transmission of such an instruction is not in the nature of a confidential communication. United States v. Hall, 346 F.2d 875, 882 (2d Cir., 1965), cert. den. 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965); United States v. Bourassa, 411 F.2d 69, 74 (10th Cir., 1969), cert. den., 396 U.S. 915, 90 S.Ct. 235, 24 L. Ed.2d 192 (1969).

Wigmore has helpfully analyzed the problem presented by this motion.

"The courts have not always used consistent language in answering the question whether the privilege is limited in some way to communications *necessary* or *material* or *relevant* to some purpose of the consultation.

It should be clear, on the one hand, that the actual necessity of making a particular statement, or the materiality to the cause of a particular fact, cannot determine the answer, for the client cannot know what is necessary or material, and the object of the privilege is that he should be unhampered in his quest for advice. On the other hand, when he knowingly departs from that purpose and interjects other matters not relevant to it, he is in that respect not seeking legal advice, and the privilege does not design to protect him. The test is, therefore, not whether the fact or the statement is actually necessary or material or relevant to the subject of the consultation, but whether the statement is made as *a part of the purpose of the client* to obtain advice on that subject. Some such rule would seem to have been in the minds of all the judges in spite of the occasional apparent inconsistency of their utterances." 8 Wigmore, Evidence § 2310 (McNaughton rev. 1961). (Footnotes and citations omitted)

"A lawyer is sometimes employed without reference to his knowledge and discretion in the law—as where he is charged with finding a profitable investment for trust funds. . . . It is not easy to frame a definite test for distinguishing *legal from nonlegal advice.* Where the general purpose concerns legal rights and obligations, a particular incidental transaction would receive protection, though in itself it were merely commercial in nature—as where the financial condition of a shareholder is discussed in the course of a proceeding to enforce a claim against a corporation. But apart from such cases, the most that can be said by way of generalization is that a matter committed to a professional legal adviser

*is prima facie so committed for the sake of the legal advice* which may be more or less desirable for some aspect of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice.

Obviously, much depends upon the circumstances of the individual transactions." 8 Wigmore, Evidence § 2296 (McNaughton rev. 1961). (footnotes omitted)

There is no doubt that one could argue that holding these communications to be within the privilege would further the purpose of the privilege in that the disclosure by counsel will inhibit the development of trust on the part of clients and, as a consequence, inhibit full communication. However, the law has always recognized competing considerations, such as the necessity of the testimony of men in the enforcement of the criminal laws. Consequently, the scope and structure of the privilege is narrowed because of competing considerations.

 Communications between counsel and defendant as to the trial date do not involve the subject matter of defendant's legal problem. Moreover, this is so clear that we need not be concerned in this regard with the factor of a client's uncertainty as to the relevancy of information which he imparts to his attorney. Such communications are non-legal in nature. Counsel is simply performing a notice function. In fact, we take judicial notice that the courts generally rely upon counsel to perform such a function.

For this reason, and the fact that any communication from the attorney to the client in this regard was based on facts obtained by the attorney from a source other than his client, we hold that the transmission to defendant from the attorney of the fact of the time of trial is not privileged.

Defense counsel requests that we limit this disclosure to the situation when the attorney, himself, communicated this fact to the defendant. However, the rationale of our holding requires that the transmission of this information to defendant by defense counsel's office personnel is also outside the privilege. Also, defense counsel would have us exempt from disclosure other transmissions of this information to defendant by defense counsel which transmissions took place during strategy sessions concerning defendant's defense to this indictment. Both the rationale set out above and the fact that the questions proposed are specific and discrete, lead us to conclude that the transmission of the information in that context is also outside the privilege.

The communications involved here are not of the type that the client might arguably consider relevant to his legal problem. The information is not the type of non-legal information which is related to the client's legal problem and the advice he needs thereon and, for that reason, is not a protected incidental communication. Cf. United States v. United Shoe Machinery .Corporation, supra, 89 F.Supp. at 359.

Finally, we also hold based on the reasoning above, that the communications of the defendant to defense counsel with respect to the trial date are outside the privilege.

 Defense counsel has also indicated the peculiarly sensitive problem that a situation such as this presents for defense counsel of the Defender Association. We understand the singular problems that such counsel has in establishing a relationship of trust with their clients. Defense counsel suggests that this factor should be considered in shaping the attorney-client privilege in this context and/or that we should hold that disclosure under these circumstances would violate public policy. We decline to so hold. The impact of such a holding is difficult to forsee and, at least with respect to notice for court appearances, less drastic solutions to the problem should be created.

Defense counsel has requested, conditioned on the outcome of this motion, leave to withdraw from representation of the defendant. We grant his request.