Argued and submitted January 25, affirmed May 15, 1984

STATE OF OREGON,
*Respondent on Review,*

*v.*

MARK ALLEN OGLE,
*Petitioner on Review.*

(CA A26378; SC S30175)

682 P2d 267

Helen I. Bloch, Salem, argued the cause for petitioner on review. With her on the petition and brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

ROBERTS, J.

Jones, J., concurred and filed an opinion.

Lent, J., dissented and filed an opinion in which Linde and Carson, JJ., joined.

## ROBERTS, J.

Defendant appeals his conviction for failure to appear in the first degree. He contends that testimony of his former counsel should have been excluded from evidence as violative of the attorney-client privilege. The testimony was that the former counsel had sent a letter to defendant notifying him of a court appearance date. We hold that the testimony falls outside the scope of the privilege and was therefore properly admitted into evidence.

Defendant was arrested and charged with two counts of forgery in the first degree. He was released pending arraignment after signing a Security Release statement. Subsequently, the date of his arraignment was set for July 1, 1981. Defendant failed to appear for arraignment. In August, 1982, defendant was arrested in California and extradited to Oregon. He was charged with failure to appear in the first degree.

At trial upon this charge, Alan Scott, defendant's counsel in 1981, testified, over objection by defendant's trial counsel on grounds of the attorney-client privilege, that he had sent a letter to defendant notifying him of the arraignment hearing date. The trial court admitted the testimony, but did not admit the letter, which included legal advice from Scott to defendant. The Court of Appeals affirmed. 65 Or App 169, 670 P2d 222 (1983).

Whether the introduction of testimony of this nature violates the attorney-client privilege is controlled by OEC 503, which defines "confidential communication" as one which is "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." OEC 503(1)(b).

■■ The general rule of privilege is found in OEC 503(2)(a):

"A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

"(a)   Between   the   client   * * *   and   the   client's   lawyer
* * *."

The rule thus prohibits the admission of a "communication not intended to be disclosed to third persons" which was "made for the purpose of facilitating the rendition of professional legal services." The application of the privilege hinges on both the intent of the parties to shield the communication from disclosure and the purpose for which the communication is made. Both factors must be met in order for defendant successfully to assert the privilege.

The question whether an attorney's testimony that he notified his client of a court date violates the attorney-client privilege has arisen on a previous occasion in Oregon. In *State v. Bilton,* 36 Or App 513, 585 P2d 50 (1978), a decision which preceded enactment of the Oregon Evidence Code, the Court of Appeals held that such testimony was not privileged. The court applied an analysis similar to that found in *United States v. Woodruff,* 383 F Supp 696 (ED Pa 1974).[1] The Court of Appeals stated in *Bilton:*

"The court [in *Woodruff*] held that a communication between attorney and client in a criminal case as to the time and place of trial is not within the attorney-client privilege, since [it is] nonlegal in nature with counsel simply performing a notice function. Clearly, the date set for trial is a matter of public record and cannot conceivably be considered confidential." 36 Or App at 516.[2]

We have not previously interpreted OEC 503 in this particular context, and while the outcome of this case depends upon interpretation of that rule, we, nevertheless, examine for

---

[1] *Woodruff* reached the same result on the same issue, stating that such communication was not made for the purpose of securing professional legal services and that the communication was not incidental to the legal problem of the defendant. 383 F Supp 696, 697 (ED Pa 1974).

[2] *Bilton* interpreted former ORS 44.040, the attorney-client privilege statute replaced by OEC 503. ORS 44.040 provided in relevant part:

"(1)   There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"* * * * *

"(b)   An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment."

guidance cases that have dealt with the attorney-client privilege in similar circumstances.

The federal court reasoned in *United States v. Freeman*, 519 F2d 67, 68 (9th Cir 1975):

"The district court did not err in requiring counsel to testify. The evidence sought to be elicited from him was not of a confidential nature and hence was not protected by the attorney-client privilege. It simply related to whether he had advised his client of the court's order to appear. We think the Second Circuit aptly appraised the matter when it said:

'The relaying of this message is not in the nature of a confidential communication. [Citations omitted.] Defense counsel served merely as a conduit for transmission of a message. * * * Defendant's counsel had a duty to relay the instructions to his client in his capacity as an officer of the court, and this in no way was inconsistent with his obligation to his client.'

*United States v. Hall,* 346 F.2d 875, 882 (2d Cir. 1965); *see also United States v. Woodruff,* 383 F.Supp. 696, 698 (E.D.Pa. 1974)."

The facts in this case demonstrate the defendant's former attorney's common practice for notifying clients of court dates. Scott testified:

"Q. As part of your standard procedure do you do anything upon receipt of [the court appearance date from the court] to notify the client * * * of the date that is announced * * *?

"* * * * *

"A. Just to save time. I set the cases with the docket clerk. The docket clerk and I sit down and pick days that are appropriate to try various cases. I get a list of those cases and my secretary then sends out notices from that.

"* * * * *

"Q. What — according to the procedure that you use in your office, what sort of notices are sent?

"A. Well, generally a letter is sent to the client indicating a particular court appearance or some such thing."

As *United States v. Bourassa*, 411 F2d 69, 74 (10th Cir 1969), points out:

"It is also argued that it was error to permit appellant's former attorney to testify that he notified appellant to be

present for his first trial * * *. Relating such notice to the client was counsel's duty as an officer of the court, and was not within the privilege. * * *"

In this case, the trial judge noted the practice that defense counsel carries out for the court the duty of notifying clients of court dates. Our trial courts routinely require defense counsel to notify their clients of court appearance dates and defense counsel carry out this duty as officers and agents of the court.[3] We are not persuaded that this notification task implicates confidential communications as defined in our evidence code merely because it occurs between attorney and client. When an attorney notifies a client of a court date set for the client, it is not "for the purpose of facilitating the rendition of professional legal services." OEC 503(2). The lawyer is acting merely as an agent for the court in communicating the court date to the client. The attorney's later disclosure of the fact that he or she performed this function is not privileged.[4]

Defendant argues that the critical feature of his former counsel's testimony was not that it disclosed the fact that defendant's arraignment date had been set, but that it disclosed that his counsel had communicated that fact to him. The statute under which defendant was convicted makes criminal intentional failure to appear, ORS 162.205,[5] thus

---

[3] There is evidence in this case that the arraignment court presiding over the initial forgery charge did, in fact, instruct Scott to attempt to contact defendant and then to inform the court whether he had been able to make the contact.

[4] This conclusion formed the basis for the trial court's decision:

"By way of policy, in administering the courts, setting cases for trial, it seems to me that we have to be able to rely on notice being sent through the attorney to the client. If we are unable to rely on notice reaching the client through the attorney, then the alternatives are unacceptable. We would have to have clients either retained in custody so they will be available for trial, or have them appear in person periodically to — say, weekly to show the Court that they are in fact going to in good faith attend to their judicial business. These alternatives are unacceptable, and I don't feel that it was ever intended that the information imparted to the client as to his trial dates or appearance dates is privileged in the law.

"If you go further than that and get into the advice of the attorney as to consequences if he fails to appear and that kind of thing, I think those are privileged matters. That's the advice of the attorney to the client as to legal matters. However, as to notice matters, I don't feel that's privileged at all. * * *"

[5] ORS 162.205 provides:

"(1) A person commits the crime of failure to appear in the first degree if,

necessitating that the state prove that defendant knew he was supposed to appear, not merely that a court date was set and defendant missed it. Defendant makes several policy arguments in support of his position. He argues that admission of such testimony will engender distrust between attorneys and clients, weaken the attorney-client relationship and impinge on defendant's right to counsel.

In a case involving a tax investigation rather than a charge of failure to appear, the Court of Appeals for the Ninth Circuit identified the rationale for the privilege, stating that because

"* * * the effect of the assertion of the attorney-client privilege is to withhold relevant information from the finder of fact, the privilege is to be applied only when necessary to achieve its purpose of encouraging clients to make full disclosure to their attorneys." *United States v. Osborn,* 561 F2d 1334, 1339 (9th Cir 1977).

A Seventh Circuit case determined that a grand jury could require testimony from an attorney concerning his representation of a client who disappeared after the client testified before the grand jury. In so holding, the court stated:

"Once the attorney-client relationship is established, inquiry will focus upon the nature of the communication or information sought. The relationship itself does not create '[a] cloak of protection [which is] draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client.' *United States v. Goldfarb,* 328 F2d 280, 281-82 (6th Cir), *cert. denied,* 377 US 976, 84 S Ct 1883, 12 L Ed 2d 746 (1964). The privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.' *Fisher v. United States,* 425 US [391,] 403, 96 S Ct [1569,] 1577 [,48 L Ed 2d 39 (1976)]." *Matter of Walsh,* 623 F2d 489, 494 (7th Cir), *cert denied, sub nom Walsh v. United States,* 449 US 994, 101 S Ct 531, 66 L Ed 2d 291 (1980).

The facts of the instant case do not establish that the goal of full disclosure by the client to his attorney has been

having by court order been released from custody or a correctional facility upon a release agreement or security release upon the condition that he will subsequently appear personally in connection with a charge against him of having committed a felony, he intentionally fails to appear as required.

"(2)   Failure to appear in the first degree is a Class C felony."

adversely affected. The admission of testimony by the attorney of his notification to the client of a court date does not impede communication from client to attorney or vice versa. We find no indication of a violation of public policy or the potential for diminution of defendant's right to counsel in admitting such testimony.

Neither the fact communicated in the instant case, a court appearance date, nor the fact of the communication to the defendant, was a confidential communication within OEC 503. We hold that notification of defendant by his former counsel of the date set for his appearance for arraignment is admissible over the objection of defendant that it is protected by the attorney-client privilege.

Affirmed.

**JONES, J.,** concurring.

I write this concurring opinion in response to the dissent which contends the mere ministerial act of a lawyer informing a client of a trial date is a privileged confidential communication made to facilitate the rendering of legal service if so intended by the lawyer or the client. The dissent cites not one case nor any relevant legislative history to back up the conclusion reached. The reason no authority is cited, other than the statute and parts of its commentary, is that every appellate court that has considered the issue, including the Oregon Court of Appeals, has held such communication is not privileged. The minutes of the Evidence Revision Commission and the legislative history of the Oregon Evidence Code reflect that the legislature wished not to extend the law of attorney-client privileges any further than absolutely necessary to encourage free, open, explicit and candid communication between client and attorney.[1]

---

[1]An example of this intent is that the commission and legislature opted for the "control group" rule, leaving all communications between corporate counsel and non-control group employes not privileged. The commentary to OEC 503(1)(d) states:

"Under the control group test, the attorney-client privilege attaches only when the corporate employe is in a position to control or have substantial effect on a decision about any action which the corporation may take upon the advice of an attorney. This group includes, and may be limited to, the director and executive officers of the corporation. *Recent case law elsewhere would extend the privilege to a broader range of personnel. Upjohn Co v. United States,* [449 US 383, 101 S Ct 677, 66 L Ed 2d 584 (1981)] * * *." (Emphasis added.)

The dissent would reverse this case and remand it to the trial court for a determination whether defendant's attorney, Mr. Scott, or defendant, in fact intended the letter informing defendant of the arraignment date not to be disclosed to third persons within the meaning of the statute.[2]

The evidence from the record is clear that the lawyer did not intend the communication to be confidential. A court reporter was called as a witness for the state and testified without objection that the following testimony was given by the lawyer at the scheduled arraignment date (the one at which the defendant failed to appear):

"The Court: Mr. Scott, your matter of Ogle first. Is Mr. Ogle in custody?

"Mr. Scott: No, he is not, your honor.

"The Court: Is he present in court?

"Mr. Scott: He is not present.

"* * * * *

"* * * He resides in Salem or thereabouts. I sent a letter over to what I believe to be his address on June 19th, telling him of [the court date].

"* * * * *

"* * * and the letter was not returned. I don't know what to say."[3]

Does this colloquy indicate the lawyer, the court or anyone considered the mailing of the notice of the trial date to be confidential? The lawyer disclosed the fact in open court. I submit it clearly demonstrates that in the everyday practice of law such communications are not treated as confidential privileged communications.

I also agree with the reasoning of distinguished jurist Judge Irving R. Kaufman of the Second Circuit Court of

---

[2]Professor Kirkpatrick in his work "Oregon Evidence" (1982), states, "[w]hether the communication is confidential depends upon the intent of the *client*." (Emphasis added.) Therefore, if that be true, remanding of the case to ascertain the intent of the lawyer would be inappropriate. Intent of the client would be irrelevant because the client claims he never received the communication.

[3]This testimony alone should render the defendant's contention moot since this testimony from the court reporter was substantively the same as that given by the attorney.

Appeals (New York) in *United States v. Hall*, 346 F2d 875, 882 (2nd Cir), *cert den* 382 US 910 (1965), when he aptly stated:

"* * * The relaying of this message is not in the nature of a confidential communication. [Citations omitted.] Defense counsel served merely as a conduit for transmission of a message. * * * Defendant's counsel had a duty to relay the instructions to his client in his capacity as an officer of the court, and this in no way was inconsistent with his obligation to his client."

Further, every court that has been confronted with this issue has agreed with Judge Kaufman. *United States v. Clemons*, 676 F2d 124 (5th Cir 1982); *Matter of Walsh*, 623 F2d 489 (7th Cir), *cert den* 449 US 994 (1980); *In re Grand Jury Proc., Des Moines, Iowa*, 568 F2d 555 (8th Cir 1977), *cert den* 435 US 999 (1978); *United States v. Osborn*, 561 F2d 1334 (9th Cir 1977); *United States v. Uptain*, 552 F2d 1108 (5th Cir), *cert den* 434 US 866 (1977); *United States v. Freeman*, 519 F2d 67 (9th Cir 1975); *United States v. Bourassa*, 411 F2d 69 (10th Cir), *cert den* 396 US 915 (1969); *United States v. Woodruff*, 383 F Supp 696 (ED Pa 1974); *State v. Fingers*, 564 SW2d 579 (Mo App 1978). *See also In re Richardson*, 31 NJ 391, 157 A2d 695 (1960).

The dissent contends the sending of notices of court dates is facilitating the rendering of a legal service. Note the "legal service" performed in this case, which I submit is the typical routine of any busy law office. This standard practice demonstrates these communications are mere ministerial acts involving no confidentiality.

Scott testified:

"Q. As part of your standard procedure do you do anything upon receipt of [the court appearance date from the court] to notify the client * * * of the date that is announced * * *?

"* * * * *

"A. Just to save time. I set the cases with. the docket clerk. The docket clerk and I sit down and pick days that are appropriate to try various cases. I get a list of those cases and my secretary then sends out notices from that.

"* * * * *

"Q. In terms of standard operating procedure * * * normally are letters sent out in the form of form letters, letters to notify a client of their appearance date? * * *

"* * * * *

"A. * * * What I do is I'll go to the secretary with the list of cases that I have set in either Circuit Court or District Court or elsewhere, and say these persons have to be notified about this appearance at this time and it will be on the list. * * *"

Does this sound like a "confidential communication" within the definition of OEC 503(1)(b)?

" 'Confidential communication' means a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."[4]

I agree with the comments of Professor Laird Kirkpatrick:

"Under prior Oregon law it has been held that the following are not confidential communications protected by the privilege: disclosure of the existence of assets left with an attorney, see *State ex rel Hardy v. Gleason,* 19 Or 159, 23 P 817 (1890); the fact of employment and the name and address of a client. See *Cole v. Johnson,* 103 Or 319, 205 P 282 (1922); *In re Illidge,* 162 Or 393, 91 P2d 1100 (1939). The Commentary states that the legislature did not intend to modify the law of these cases, described in the Commentary as exceptions to the privilege. See also *State v. Bilton,* 36 Or App 513, 516, 585 P2d 50 (1978) (court held that communications between the attorney and client in a criminal case as to the time and place of trial are 'not within the attorney-client privilege, since they are nonlegal in nature with counsel simply performing a notice function. Clearly, the date set for trial is a matter of public record and cannot conceivably be considered confidential.')" Kirkpatrick, Oregon Evidence 148-49 (1982).

If the dissent considers this notification to be a confidential privileged communication between lawyer and client if so intended by the lawyer, how is the court ethically to

---

[4]This language is not unique to Oregon. It appears in the 1969 draft of the Proposed Federal Rules of Evidence and has been adopted by 16 states. *See, e.g.,* Neb Rev Stat § 27-503 (cum supp 1978); Wis Stat Ann § 905.03 (West cum sup 1979). For other examples, *see* 2 Weinstein's Evidence (1982).

communicate the trial date to the client? Is the court to "ex parte" send a letter containing the notice of the trial date to the client? If the dissent's position is correct, "furtherance of the rendition of professional legal services to the client" would include not only notification of the trial date, but also notification of the name of the trial judge, the name of the prosecutor, the number of the courtroom where the trial is to be held and the location of the county courthouse. Surely these communications are not to be considered "confidential communications" within OEC 503(1)(b).

What actually happened in this case? The defendant was arrested and placed in custody. He was brought before the court without counsel. The Deputy District Attorney was present. Mr. Scott, the Douglas County Public Defender was appointed to represent the defendant. With Mr. Scott present, the indictment was read to the defendant and the case was continued for a specific arraignment date. The defendant, released on his own recognizance, agreed to keep in contact with his lawyer and not to leave the state. The lawyer, ex parte, picked out an arraignment date at the court clerk's office and mailed notice of that date to the defendant at the address the defendant listed on his conditional release agreement. The defendant testified that he never received the letter. If that be true, where and when did the confidential communication take place between lawyer and client? Of course, if the defendant had testified that he had engaged in a communication with his lawyer about the court date, then the lawyer could be called to testify, because the client would have waived the privilege under OEC 511[5] by testifying about the communication.

---

[5]OEC 511 provides:

"A person upon whom Rules 503 to 514 confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This section does not apply if the disclosure is itself a privileged communication. Voluntary disclosure does not occur with the mere commencement of litigation or, in the case of a deposition taken for the purpose of perpetuating testimony, until the offering of the deposition as evidence. Voluntary disclosure does occur, as to psychotherapists in the case of a mental or emotional condition and physicians in the case of a physical condition upon the holder's offering of any person as a witness who testifies as to the condition."

The fact is that trial judges, knowing they cannot ethically communicate ex parte with lawyers' clients, order the lawyers to perform the task for the court, as officers of the court, to help discharge ministerial acts necessary to efficient administration of the judicial system. As pointed out in a footnote in the majority opinion, the trial judge stated:

> "By way of policy, in administering the courts, setting cases for trial, it seems to be that we have to be able to rely on notice being sent through the attorney to the client. If we are unable to rely on notice reaching the client through the attorney, then the alternatives are unacceptable. We would have to have clients either retained in custody so they will be available for trial, or have them appear in person periodically to — say, weekly to show the Court that they are in fact going to in good faith attend to their judicial business. These alternatives are unacceptable, and I don't feel that it was ever intended that the information imparted to the client as to his trial dates or appearance dates is privileged in the law." 297 Or at 89 n 4.

In this case the trial judge ordered defense counsel to communicate the court appearance date to his client as follows:

"The Court: Is he present in court?

"Mr. Scott: He is not present.

"The Court: All right. Do you have that phone number?

"Mr. Scott: Let's see. 363-1473.

"* * * * *

"Mr. Scott: I would appreciate having ten days to do that.

"The Court: Well, I am not going to give you ten days, because if he is gone, why — but I will give you until Monday.

"Mr. Scott: Okay.

"The Court: I will put the burden on you, Mr. Scott, to advise me by Monday evening whether you have been able to make contact or not.

"* * * * *

"Mr. Scott: * * * I should be able to do it this afternoon."

As a practical matter, as expressed by the experienced trial judge, if lawyers cannot be depended upon to carry out the simple task of informing clients about trial dates, the result will be to incarcerate more people arrested for crime in pretrial detention. For instance, in Multnomah County in

1983, 4,393 defendants were arraigned in felony court, 3,168 were granted pretrial release, and 240 failed to appear. If an effective substitute cannot be found for court date notices, even a ten percent increase in pretrial detention could have a devastating effect for county correctional facilities — now filled to capacity — as well as to the defendants. Of course, the court could insist on the defendant being present at every court date setting, but because there can be a number, if not dozens, of tentative dates set for each case, this would not be practical in most cases. The court could set tentative court dates, depending on availability of lawyers, parties, witnesses and judges with a certain "tag" date, *e.g.;* "In addition to any other court date set, 90 days from this date, you must be before me in any event." As an alternative, the court could insist on a waiver of any attorney-client privilege as a condition of release and the recognizance personnel could be authorized by the defendant to notify the defendant of all court dates. A court could also insist that every petition and order for an appearance date change be personally signed by the defendant if not present in the court.

Although there may be some alternatives to calling counsel as a witness, the fact remains that as a practical matter the most efficient way to inform a client of a court date is to have defense counsel or counsel's assistants communicate the court dates. Nothing about communicating a trial date constitutes a confidential communication.

The real concern is the policy effect of an attorney testifying against the former client. The fact that a lawyer can be called to testify against a client is not an evidence problem, it is a professional relationship problem.[6] Such a practice

---

[6]If I understand the dissent, the communicating lawyer would be called to testify as to intent. If that be true, the problem of substituting counsel would still exist because the lawyer could not offer himself as a witness under OEC 606-1. In this case, substitute counsel has already been appointed, but if the communication about a trial date were absolutely privileged then no substitution would be required because the lawyer could not be called to testify about any aspect of the communication. This is the real problem faced by the defense bar and which, understandably, they wish to avoid. If defense counsel cannot be called as a witness—period, then counsel does not have to "conflict" off the case. It is a discouraging fact that in the statistics cited probably 240 substitute lawyers had to be appointed to replace counsel who spent untold hours preparing cases. From an administrative point of view, I am certain an absolute privilege would be better than what the dissent suggests. Further, if the lawyer is going to testify as to his intent, cannot the client claim the lawyer-client privilege to prohibit the lawyer from testifying, or does the dissent suggest the lawyer's intent is not privileged.

challenges the credibility of the lawyer in the client's eyes. The client can bemoan the fact that "my own lawyer testified against me." That may depreciate the feeling of attorney-client trust, but the purpose of the law of privileges is to encourage full disclosure between the lawyer and his client so that the client receives fully informed legal advice, not on maintaining a general trust in the profession. Of course, it can be argued that if a client lacks trust in the lawyer-client privilege he or she might be unwilling to disclose confidences, but the law does not ordinarily prohibit a lawyer from testifying about nonconfidential matters,[7] such as the name, address, occupation or business of a client. Annot, 16 ALR 3d 1047 (1967). For many other examples, *see* 2 Louisell & Mueller, Federal Evidence 540-49, § 210 (1978), and Saltzburg & Redden, Federal Rules of Evidence Manual 237-38 (3rd ed 1982). As was emphasized by the Supreme Court of the United States in *Fisher v. United States,* 425 US 391, 403, 96 S Ct 1569, 48 L Ed 2d 39 (1976):

> "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged. 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961) (hereinafter Wigmore); McCormick, [Evidence] § 87, p. 175 [hereinafter McCormick]. The purpose of the privilege is to encourage clients to make full disclosure to their attorneys. 8 Wigmore § 2291, and § 2306, p. 590; McCormick § 87, p. 175, § 92, p. 192; [citations omitted]. As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice. However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege. * * *"

The .400 hitters in evidence law, Wigmore, Morgan and McCormick, all expressed anti-privilege attitudes,[8] and

---

[7] *See* Kirkpatrick, Oregon Evidence 148-49 (1982).

[8] 8 Wigmore, Evidence § 2291 (McNaughton rev 1961); Morgan, *Suggested Remedy for Obstructions to Expert Testimony by Rules of Evidence,* 10 U Chi L Rev

Wigmore's utilitarian approach to privileges is expressed in the cited federal cases. The majority of this court feel these decisions are sound and consistent with a proper interpretation of OEC 503.

Here, we are dealing with an issue not specifically covered by an OEC rule, not subject to any legislative commentary, not mentioned in the proposed federal rules, and not previously addressed by this court. Therefore, decisions by federal courts universally holding that ministerial communications of court dates are not within the lawyer-client privilege, although not binding on this court, should not be ignored.

I concur with the majority opinion.

**LENT, J.,** dissenting.

Defendant was tried on a charge of violation of ORS 162.205, Failure to Appear in the First Degree. It was necessary to conviction that the state prove that defendant intentionally failed to appear. As a link in the chain of evidence necessary to convict, the state had to prove that defendant knew the date on which he was to appear.[1]

To furnish evidence upon which the trier of fact could make a finding that defendant knew the appearance date, the state called a lawyer who had represented defendant on the earlier felony charge to testify that the lawyer had communicated the appearance date on the earlier charge to the defendant. The defendant objected, citing the "Lawyer-client" privilege, OEC 503(2). Over that objection, the lawyer was permitted to testify that he had communicated to the defendant the date.

The majority opinion proceeds as follows: (1) The application of the privilege is dependent upon two elements: (a) "the intent of the *parties* [emphasis added] to shield the communication from disclosure" and (b) "the purpose for

---

285, 286, 288-290 (1942); Morgan, *Some Observations Concerning a Model Code of Evidence,* 89 U Pa L Rev 145, 153 (1940); McCormick, *Law and the Future: Evidence,* 51 NW U L Rev 218, 220 (1956).

[1]In given circumstances a defendant may be convicted of violation of ORS 162.205 even if he did not actually know an appearance date. For example, *see State v. Rose,* 67 Or App 335, 677 P2d 765 (1984), rev den 297 Or 82, 679 P2d 1367 (1984).

which the communication is made." (2) A court appearance date is a matter of public record. (3) A lawyer acts as an officer or agent of the court in communicating the date to the client. (4) Communication of the court date is not made for the purpose of facilitating the rendition of professional legal services to the client; therefore, it is not necessary to address the intent of the lawyer and client in this case.

I have no quarrel with the first and second premises.

As to the third premise, I would agree that the trial courts do rely upon lawyers to communicate court appearance dates to the clients, and I would even agree that perhaps where the lawyer fails to advise the court that he will not act as the court's agent for communication, the lawyer tacitly assents to acting, at least in part, as the court's agent. That does not mean, however, that such is his sole role. He also makes the communication because he is the very person who is the lawyer for the particular party.[2]

Before addressing the fourth premise, I would draw attention to the fact that the statutory scheme contains two separate uses of the phrase, "the rendition of professional legal services to the client." OEC 503(1)(b) provides:

> " 'Confidential communication' means a communication not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

OEC 503(2), insofar as it is pertinent to this case, provides:

> "A client has a privilege * * * to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> "(a)   Between the client * * * and the client's lawyer * * *."

In the definition, OEC 503(1)(b), the phrase is used to describe an exception to "third persons." In other words, there may be some disclosure intended beyond lawyer and client

---

[2]I speak of "party" rather than defendant, for the lawyer in a civil case customarily performs the same dual role.

without destroying confidentiality and thereby the privilege. As stated in the legislative commentary:[3]

> "The rule allows some disclosure beyond the immediate circle of lawyer and client and their representatives without impairing confidentiality, as a practical matter. It permits disclosure to persons 'to whom disclosure is in furtherance of the rendition of professional legal services to the client,' contemplating that these will include a 'spouse, parent, business associate, or joint client.' Comment, California Evidence Code section 952. It also allows disclosure to persons 'reasonably necessary for the transmission of the communication' without loss of confidentiality."

The phrase is used in OEC 503(2), on the other hand, to describe or limit by "purpose" those confidential communications to which the privilege applies. The two uses of the phrase should not be confused.[4]

I cannot agree with the fourth premise of the majority, that the communication was not made for the purpose of facilitating the rendition of professional legal services to the client. A lawyer is employed for the purpose, among other things, of ascertaining the dates of court appearances, representing the client at court appearances, advising the client in preparation for those appearances and the client's conduct at such appearances. Even if I assume, *arguendo,* that notifying the client of a court appearance date is not itself the rendition of professional legal services, the giving of that notification most certainly is a communication made to facilitate the rendition of such services.[5]

---

[3]Although there is no official legislative commentary in the sense of a commentary approved by the Legislative Assembly, a commentary was prepared by legal counsel for the House Committee on the Judiciary and the Senate Justice Committee, and that commentary was approved by those standing legislative committees.

[4]The concurring opinion blurs this distinction when, at the outset, it states that this dissent

> "contends the mere ministerial act of a lawyer informing a client of a trial date is a privileged confidential communication made to facilitate the rendering of legal service if so intended by the lawyer or client."

I have not contended any such thing. Neither my discussion nor my reasoning is so circuitous. *Intent* only comes into play in determining if the definition of "confidential communication" is met. The *purpose* of the communication to facilitate rendition of legal services governs whether the privilege may be invoked to prevent the disclosure of a confidential communication.

[5]One sentence in the Official Legislative Comment to OCE 503(2) simply does not track with the text of the rule itself. That sentence is:

Before proceeding to discussion of the purported authority on which the majority reaches its holding that the communication here was not for the purpose of facilitating the rendition of legal services, I pause to note that the majority and the concurring opinion simply refuse to accept the fact that the legislature chose the term "legal services" rather than "legal advice" in promulgating OEC 503. In the main, the majority relies on federal court cases that analyze the issue in terms of whether such a communication is the rendition of legal advice. I heartily agree that it is not "legal advice," but what that has to do with whether sending notice of the trial date facilitates the rendition of "legal services" is something I fail to fathom.[6]

"Legal services" is obviously a much broader term than "legal advice." When a lawyer accompanies his client to court for arraignment and says not a word to him during the proceeding, the lawyer certainly renders a legal service. When the lawyer marshals the evidence, subpoenas the witnesses, drafts requested instructions and a form of verdict, makes opening statement, makes appropriate motions upon trial, examines witnesses, argues the case to the factfinder, takes exceptions to the court's charge to a jury, etc., he surely

---

"All these communications [described in OCE 503(2)(a) through (d)] must be specifically for the purpose of *obtaining* legal services for the client; otherwise the privilege does not attach." (Emphasis added)

The *text* of the rule, on the other hand, requires that the purpose be "facilitating the rendition of" legal services to the client. I cannot explain why the comment is worded as it is.

[6]After quoting the particular witness lawyer's testimony as to his practice in consulting with the docket clerk to select a trial date and instructing his secretary to send a letter to the client, the concurring opinion asks, "Does this sound like a 'confidential communication' within the definition of OEC 503(1)(b)?" I am not sure to what "this" in that question refers. Does it refer to the testimony or to the practice? In either event, the answer does not go to the claim of privilege as to disclosure of the fact of communication. That the witness lawyer consulted with the calendar clerk or any other court officer or employee to select a trial date is not relevant to the claim of privilege by this defendant. That the lawyer has his secretary send the letter to his clients does not, by very definition in OEC 503(1)(b), destroy confidentiality. What the testimony or the practice "sound[s]" like has nothing to do with the statutory text that is sought to be interpreted in the case at bar.

The concurring opinion agrees with Professor Kirkpatrick. I acknowledge most emphatically that both the majority and the concurring opinions agree with the professor. The problem is that the professor is relying, as do those opinions, on authority that is directed to something other than the statutory text.

performs "legal services," although none of those is the rendering of "legal advice."[7] Likewise, out of the courtroom setting, the lawyer does many things for clients that are "legal services" not involving, as such, the giving of legal advice. For example, a lawyer may at the behest of a client attend a public hearing before a government agency to present the views of a client or merely to observe what transpires in order to be able to serve or advise the client as to a subsequent course of action. The lawyer might attend if the client desires the lawyer to attend, although that request to attend is in direct conflict with the lawyer's advice to the client that the lawyer should not attend upon the meeting or hearing.

Despite the fact that the rendition of legal advice is only a part of rendition of legal services, the majority and concurring opinions insist in treating the interpretation of OEC 503 as if it spoke to "legal advice" rather than "legal services." The majority specifically acknowledges that the outcome of this case turns on interpretation of OEC 503 and then proceeds to ignore the text of that rule. Instead of discussing this case in terms of the text enacted by the legislature, the majority turns for support to case law that interprets entirely different statutory text or has no reference at all to a rule established by a legislative body.

The majority, while acknowledging that the case antedates enactment of the Oregon Evidence Code, cites *State v. Bilton,* 36 Or App 513, 585 P2d 50 (1978). That decision was concerned with interpretation of a statute, former ORS 44.040, that made no pretense of rigorously defining the privilege as has been done in OEC 503. Not only did that decision concern a different statutory text, that court relied upon a trial court decision, *United States v. Woodruff,* 383 F Supp 696 (ED Pa 1974), which was not interpreting any text whatsoever. The trial judge in that case based his decision, in

---

[7]Again and again the concurring opinion returns to the theme that this type of communication is not rendition of legal services. That opinion makes the point that notifying the client of a trial date is the "typical routine of any busy law office." Because a law office routinely performs a service for its clients, does that somehow take that particular service out of the category of "legal services"? I submit that, if anything, what a busy law office does routinely for its clients is a legal service. Busy law offices, or lawyers, are not employed by clients for the purpose of parking cars or mowing lawns of the client; rather, they are employed to give legal advice and to perform such legal services as ascertaining trial dates and notifying the client thereof.

the first instance, on the decision of another trial judge in *United States v. United Shoe Machinery Corporation,* 89 F Supp 357 (D Mass 1950). The judge in *Woodruff* quotes from the other trial judge's decision language that, on its face, disclosed that the *United Shoe* judge believed the privilege only applied to communication of a fact *from client to attorney* for the purpose of securing advice or services.[8] The judge in *Woodruff,* as in the case at bar, had before him the issue of whether the lawyer's communication to the client of an appearance date was privileged. One of his reasons for rejecting the claim of privilege is his statement that the communication was not made with the purpose of "securing" legal advice or assistance. How strange! It must be rare indeed that a lawyer makes a communication to a client for the purpose of securing legal advice or assistance. The judge in *Woodruff* then cited two appellate decisions, in which he found that the court had rejected a like claim of privilege: *United States v. Hall,* 346 F2d 875 (2d Cir 1965), cert den, 382 US 910, 86 S Ct 250, 15 L Ed2d 161 (1965), and *United States v. Bourassa,* 411 F2d 69 (10th Cir 1969), cert den, 396 US 915, 90 S Ct 235, 24 L Ed2d 192 (1969), to which I shall turn my attention presently. The trial judge then passed to a lengthy quotation from Wigmore on Evidence, in which that author was concerned with what is "legal advice" and not with the term our legislature has chosen. The *Woodruff* judge sought to buttress his decision by pointing out that the communication was based upon facts obtained by the attorney from a source other than the client and, consequently, could not be privileged. I suppose this means that if a client employs a lawyer to investigate whether the mortgage and deed records at the county courthouse contain certain information and to report the result of the investigation to the client and to keep confidential the fact of the report to the client, the lawyer's communication is not privileged because the source of the information is a public record and did not come from the client to the lawyer.

As noted, the judge in *Woodruff* relied on *United States v. Hall, supra.* The *Hall* court did not purport to apply

---

[8] In *United States v. United Shoe Machinery Corporation,* 89 F Supp 357 (D Mass 1950), the issue was the admissibility of some 800 exhibits. The judge stated that he believed the purpose of the privilege was to induce *clients* (original emphasis) to make communications to their lawyers. The judge did not purport to be applying the text of any rule or statute whatsoever.

any statutory text whatsoever; rather, that court relied upon Wigmore's assertion that this kind of communication is not legal advice. The *Hall* court did cite a decision as further authority. What decision was that? Why, it was that of the trial judge in *United States v. United Shoe Machinery Corporation, supra,* which I have already discussed at footnote 8 and accompanying text.

The other appellate court decision relied upon in *Woodruff* was *United States v. Bourassa, supra,* in which the court was not concerned with any statutory text or rule. The full holding on this issue was:

> "Relating such notice to the client was counsel's duty as an officer of the court, and was not within the privilege. United States v. Hall, supra."

411 F2d at 74. In other words, *Bourassa* contains no reasoning whatsoever and relies upon a decision which, in turn, relies upon Wigmore's words concerning legal advice rather than services and upon *United Shoe Machinery Corporation.*

The majority opinion in the case at bar relies upon *Bourassa.* I submit that that decision is indeed a slim reed to support a decision that acknowledges that this case "turns upon interpretation of [OEC 503]."

The majority cites *United States v. Freeman,* 519 F2d 67 (9th Cir 1975). Once again, we find a case in which the opinion is not concerned with the interpretation of any statutory text or rule. Indeed, the court relies upon *United States v. Hall* and *United States v. Woodruff,* both *supra.* This group of cases reminds me of how it was jokingly said that people sought to make a living in the great depression, namely, by taking in each other's washing.

Finally, the majority relies upon *Matter of Walsh,* 623 F2d 489 (7th Cir 1980), cert den sub nom *Walsh v. United States,* 449 US 994, 101 S Ct 531, 66 L Ed2d 291 (1980). The *Walsh* court relied upon Wigmore's dissertation concerning the privilege as it applied to legal advice, not legal services. The court noted that "this Circuit" had adopted the Wigmore formulation and quoted from that formulation. Not only did the quoted material relate to advice rather than services, it formulated a rule applicable only to communications from client to lawyer. Once again, the majority is shown to have

relied upon a decision that interprets no text, let alone a text similar to that adopted by the legislature of this state.

The majority cites one other decision, *United States v. Osborn,* 561 F2d 1334 (9th Cir 1977), for the proposition that because the privilege works to withhold from the trier of fact relevant information, the privilege is to be applied only where necessary to achieve its purpose. I certainly would not disagree, but before deciding what the purpose of the privilege might be, so as to apply it narrowly, a court should determine what the legislature of the forum has declared the privilege to be.

The concurring opinion cites some of the same cases as does the majority and adds cases to the list. Interestingly enough, the concurring opinion does not indicate that a single one of those cases is concerned with the interpretation of any statute or rule. I infer that the failure to do so stems from the fact that the decisions cited simply do not rest upon any text similar to that of OEC 503.

I would take special note of the concurring opinion's quotation from *Fisher v. United States,* 425 US 391, 403, 96 S Ct 1569, 48 L Ed2d 39 (1976). The quoted language speaks only to disclosures by a client to the lawyer for the purpose of obtaining legal advice. I just do not see what that has to do with a communication made by the lawyer to the client to facilitate the rendition of professional legal services.

The concurring opinion chides this dissent for not citing one case or any relevant legislative history to support my conclusion and states that the reason is that "every" appellate court has held such a communication not to be privileged. To this I answer that I cite no case because I can find no case concerned with statutory language even remotely similar to that of OEC 503. As I have already noted, neither can the majority nor the author of the concurring opinion.

The concurring opinion states that the legislative history reflects that the legislature wished to promulgate a narrow privilege. No matter what the legislature or its advisers wished to do, we are faced with interpreting what

they did do. My opinion is the only one in this collection that proceeds from the text of the legislative product.[9]

My conclusion that the communication from attorney to client was for the purpose of facilitating the rendition of legal services compels me to investigate the matter of intent, which the majority did not need to reach.

Whether any particular communication is a "confidential communication" depends upon intent. "A confidential communication is defined in terms of intent." Commentary to OEC 503(1)(b).[10] To meet the definition it must be intended that the communication not be disclosed to third persons other than those classes described in the definition.

Whether there is such intent is a question of fact. The rule does not state whose intent is the key. Where the lawyer makes a given communication to the client, either one or both may intend that the content of the communication not be disclosed or that the fact of the communication not be disclosed. It might be that a lawyer intends that his communication to his client, or that he made a given communication, not be disclosed to third persons. Because the privilege is that of the client, however, the client may either prevent disclosure or might waive that privilege, and the content, or the fact, of the communication might be revealed despite the lawyer's intention. On the other hand, the communication from lawyer to client might be intended by the client not to be disclosed, either as to content or fact of communication. For example, a client involved in any kind of litigation might, and very often does, request that the lawyer investigate to determine if certain evidence exists and to report the result of the investigation to the client. When the lawyer makes that report, the lawyer may not give a hang whether or not it is disclosed to

---

[9]The concurring opinion states that certain treatise authors had "anti-privilege attitudes" and that the views of one of them are expressed in the federal cases cited by the majority and the concurring opinions. We might gain some guidance from them had any of those ".400 hitters" addressed this, or similar, statutory text, but because neither the authors nor those courts were dealing with text, I do not understand why that thought is expressed by the concurring opinion.

[10]The idea is also described obversely in the legislative commentary: "Unless an intent to disclose is apparent, however, the attorney-client communication is confidential."

third persons, but if the client intends that the content, or the fact, of the report not be disclosed to third persons, the lawyer violates the privilege recognized by OEC 503 if he makes disclosure to third persons against the will of the client.

The majority, by reason of its decision that this was not a communication for the purpose of facilitating the rendition of professional legal services, did not address whose intent is to be considered. The concurring opinion touches upon it in such a way as to leave me somewhat puzzled as to what the author's conclusion in that respect may be. The concurring opinion asserts that in this opinion I would hold that the trial court must ascertain the lawyer's or defendant's intent. The concurring opinion then states that the record is clear as to what the lawyer's intent was and supports that statement by quoting the lawyer's testimony given at a time after the making of the communication. That testimony does not go to "the intent of the *parties* [emphasis added]," as the majority puts it, at the time when the communication was made. Some observations must be made about that testimony. It addresses neither the intent of the client nor the lawyer *at the time* the communication was allegedly made. At least a part of the quoted testimony of the lawyer was given in the absence of the client, making it very difficult to claim the privilege. It is nothing more than a disclosure by the witness lawyer of an alleged communication from himself to his client. However, contends the concurring opinion,

> "The lawyer disclosed the fact in open court. I submit it [disclosure in open court?] clearly demonstrates that in the everyday practice of law such communications are not treated as confidential privileged communications."

This contention means that what one lawyer did as a matter of his particular routine, and in this particular instance, "clearly demonstrates" a universal routine. Even if that were so, what in heaven's name does that have to do with whether that routine violates a statute? The fact that one lawyer might routinely violate a statute, or that all lawyers do so, cannot operate to repeal or amend the statute unless the practice continues so long without judicial interference as to invoke the doctrine of desuetude, i.e., make the statute obsolete for want of application.

At any rate, the concurring opinion speaks here to the lawyer's intent; nevertheless, the opinion cites Professor Kirkpatrick for the proposition that it is the client's intent that controls, and the opinion then proceeds to the non sequitur that since the client "claims" he never received the communication, his intent is irrelevant.[11]

As I have discussed above, I would hold that the intent of either client or lawyer may be sufficient to establish that the communication is a "confidential communication" and therefore a proper subject for the client to invoke the privilege.

In any event, the existence or non-existence of that intention is a fact. As in other threshold questions on the admissibility of evidence, the trial judge must make a determination of the threshold or predicate fact prior to ruling as to admissibility. He cannot do that on intuition or what may be the routine of a particular lawyer or that of lawyers and clients in general. It is what the particular lawyer or client intended as to nondisclosure of the particular communication that is the crux of the decision as to admissibility.

I would hold that the cause must be remanded for trial and that if the objection is again raised, the trial judge must take evidence to show what was the intent as to disclosure to third persons of the fact of communication. The evidence as to content or fact of communication cannot be admitted over the claim of privilege unless the trial judge, based upon evidence, can find that it was not intended that the communication not be disclosed to third persons.

I now desire briefly to discuss one other aspect of the majority opinion.

A footnote to the opinion quotes the trial court to the effect that there is no practical alternative to relying on attorneys to notify their clients of court dates. That may be so,

---

[11] OEC 503(1)(b) is in the passive voice; the text does not specify whose intent is critical. Whence Professor Kirkpatrick derives his statement that it is the intent of the client that governs confidentiality is not apparent to me. Obviously, it is the client who determines whether to invoke the privilege, OEC 503(2), but that is not the test of controlling intent under the definition of "confidential communication."

but it should lead the majority to the opposite conclusion on the present issue.[12]

The issue is not whether notice to the attorney is notice to the client for purposes of deciding the original litigation. The issue is whether the attorney subsequently may be called as a witness against the client in different litigation to prove what the attorney told the client (or vice versa) in the prior case. When this court approves calling an attorney as a witness for that purpose, the effect could be to invite lawyers to decline providing personal notification, for the possible sequel of being called as a witness against the client will disqualify the lawyer and members of the lawyer's firm from representing the client in the later case.[13] If the Court's holding produces this effect, it is exactly the opposite of the reason given to justify it.

---

[12]The concurring opinion relies, in part, on some asserted proposition that the trial judge cannot ethically communicate an appearance date, a matter of public record, to the defendant *ex parte*. No authority is cited for that proposition. The closest the Code of Judicial Conduct adopted in this state comes to addressing the question is Canon 3A(4):

> "A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond."

My first blush impression is that communication to a defendant *by the trial judge* of a matter of public record, such as a trial date, is not embraced by that language. If a judge can speak directly to a party in open court when the party's lawyer is present, such as when a judge says to a defendant, "You understand that you are to be here at 9:00 a.m. Monday morning," can the judge not make that communication in writing with copy or duplicate original to the party's lawyer? Can a judge communicate such a matter directly to a criminal defendant, when the state's representative, the prosecutor, is not present? What ethical rule forbids the judge or his staff from communicating the trial date to a defendant?

[13]DR 5-101 provides:

> "* * * * *

> "(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, * * *."

DR 5-102(A) provides:

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, * * *."

This apparent conflict, however, is unnecessary. I agree that trial courts should be able to rely on attorneys to notify their clients of court dates. That well may be an attorney's professional responsibility to the court even in the attorney's role as "agent" for the client rather than for the court. But the majority's error is to confuse reliance on assistance of the attorney in the original case with reliance on the attorney's compelled testimony in a later case.

When an attorney is informed of a court date, it is the court that relies on the attorney to communicate this information to a client. When the attorney is called as a witness against the client in a later case, it is as a witness for an adverse party, i.e., the plaintiff state, not to assist the court. It is the state, not the court, that seeks to prove by means of the attorney's testimony that the client is criminally guilty of failing to appear. The attorney already has performed his service to the court or the attorney would not be called to testify to that fact. Making the attorney a witness against the client does not encourage tendering that service, it encourages avoiding that responsibility.

This decision cannot well be confined to criminal cases, nor to notice of court dates. Moreover, the rule applies equally to communications by which the client tells the attorney what the client knows. The question whether a person had actual notice can arise in civil cases, in administrative proceedings, in contempt hearings, any time that personal knowledge of an official notification is in dispute. In each situation an attorney who accepts responsibility for communicating information to a client may risk being disqualified from representing the client if the client's personal knowledge later becomes an issue.

I cannot escape the conclusion that the majority and concurring members of the court are deciding this case upon the basis of what they perceive to be the common law or upon their belief that the legislature meant to enact a rule embodying that common law as expressed by the treatise authors and in the federal cases. They may well be right as to what the legislature intended to do. That I don't know; what I do know is that the legislature did no such thing. If the legislature meant to codify the views expressed in the authorities cited in the other opinions in this case, the text adopted fails to

accomplish the purpose. This court should not do violence to what the statutory text does provide. To avoid a new trial for this defendant, and to save his conviction of a Class C felony, the court judicially rewrites a statute. That should not be; if the statute is badly written, the best way to bring it to the attention of the lawmaking department of government is to enforce the statute as written. *See,* for example, *Ferry v. Paulus,* 297 Or 70, 682 P2d 262 (1984).

I dissent.

Linde and Carson, JJ., join in this dissenting opinion.