672 A.2d 123

**Marlene VENABLE**

v.

**STATE of Maryland.**

**No. 570, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Feb. 29, 1996.

Arthur A. DeLano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Thomas K. Clancy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for Appellee.

Argued Before DAVIS, HARRELL and MURPHY, JJ.

MURPHY, Judge.

In the Circuit Court for Baltimore City, a jury convicted Marlene Venable, appellant, of distribution of cocaine and related offenses. Her appeal presents us with but one question:

Did the trial court err in permitting the State to call defense counsel as a rebuttal witness?

We answer "yes" to that question, reverse the judgments of conviction, and remand this case for a new trial.

## Background

In the early morning of September 17, 1993, Officers Roundtree and Wells of the Baltimore Housing Authority Police conducted a surveillance of the Somerset Projects, and observed appellant engaged in what appeared to be drug sales to several persons. When they observed what they believed to be a drug transaction between appellant and one Yvette Montgomery, the officers had a third officer stop Montgomery. That officer recovered from Montgomery two green topped vials containing a substance later determined to be cocaine. By the time those drugs were seized, however, appellant had left the area.

Two hours later, the officers saw appellant at a different location. According to Officer Roundtree, as he approached appellant, she attempted to flee and threw into the street a brown paper bag that contained 110 green topped vials of

cocaine. Appellant's defense asserted that the State's evidence was unworthy of belief..

## Issue

At approximately 4:30 p.m. on the third day of appellant's trial, a bench conference · occurred at which the following transpired:

[DEFENSE]: Judge, my only other witness is not here. I fully expect she'll be here tomorrow.

THE COURT: Who is it?

[DEFENSE]: Yvette Montgomery. It deals with the—

THE COURT: Why isn't she here?

[DEFENSE]: Well, she's been here the last couple of days, Judge.

THE COURT: Well, didn't she know we were going to proceed with the trial today?

[DEFENSE]: No. Well, she knew we were going to proceed to trial, but she didn't—I don't think she suspected we were going to get to her testimony today . . .

 \* \* \* \* \* \*

[DEFENSE]: . . . Now, the witness . . . has been here each day—

THE COURT: Have you talked to her today?

[DEFENSE]: No, I haven't talked to her today personally.

THE COURT: All right.

[DEFENSE]: But that witness has been here each day. And it's 4:30 this day, and—

THE COURT: Why didn't you call at lunchtime and say maybe you were going to get to her today?

[DEFENSE]: I didn't think we were going to get to her. I'm surprised . . . I mean, it's .not a total miscalculation. It's not like, you know, I told her to come back Friday and here we are Monday . . . 4:30 today.

Appellant then called another witness, who testified briefly. At approximately 4:45, the court continued the case to the· next morning.

The next day, Ms. Montgomery testified for the defense, admitting that she possessed cocaine on September 17, 1993, but claiming that she bought it from two teenagers approximately fifteen minutes before her arrest. On cross-examination, after Ms. Montgomery acknowledged that she knew appellant, the following transpired:

Q. And, ma'am, did you talk to the defendant about this case?

A. No, I didn't talk to her about the case.

Q. You never talked to her about the case?

A. No.

Q. Weren't you surprised—well, you didn't get a summons for this case; right?

A. I already knew about it.

Q. Well, who told you?

A. Hearsay.

Q. Excuse me?

A. Hearsay.

Q. Oh, so you heard about this case on the streets, and—

A. But I was coming ever since this started.

Q. But you just came down here? The defendant never said—

A. No, I was coming—

[DEFENSE]: Do you want to let her answer?

[STATE]: Your Honor,—

[THE WITNESS]: —ever since the case—

[STATE]: Excuse me, Your Honor.

THE COURT: Let her finish and then ask the question.

[DEFENSE]: Let her finish her answer.

[STATE]: Your Honor, I would appreciate it if there would be an objection, not a, "Would you let her finish her answer." I'm trying to conduct cross-examination.

THE COURT: All right.

**400**

BY [THE STATE]:

Q. Now, ma'am, you heard it on the streets, and that's why you came down here?

A. No, that's not what I said.

Q. ˙ Tell me again? Then I misunderstood.

A. I said I've been coming here ever since this case has started—

Q. And how—

A. —and since I got locked up—are you going to let me finish, please? Ever since the case was started, since I got locked up myself.

Q. September the 17th, 1993?

A. Okay. When her case started, naturally, yeah, I wanted to come and see the outcome of it.

＊ ＊ ＊ ＊ ＊ ＊

Q. Okay. And so you never knew when the defendant's court dates were; isn't that correct?

A. I told you I heard about it.

Q. So people on the streets were just talking about—

A. Not no people on no street.

Q. Well, I'm asking you, ma'am. Where did you hear it from?

A. That's irrelevant, isn't it?

THE COURT: You have to answer the question, ma'am, if you know the answer.

A. Well, I heard it from a friend, and I wanted to come and see what the outcome was going to be.

Q. Who was the friend, ma'am?

A. One of my associates.

Q. Who is it?

A. My boyfriend.

Q. Okay. And your boyfriend told you about this—

A. He's a maintenance man at the projects.

Q. And your boyfriend told you about this case, and you just decided to come down and see what happened?

A. Yeah. I wanted to see what the outcome was going to be.

Q. You never knew you were going to be a witness?

A. No, I didn't.

Q. So you just kept coming down here every day and never knew that you were going to be called to the witness stand to testify?

A. Who knows?

Q. No?

A. Who knows?

Q. Who knows?

A. That's right.

The defense then rested. In rebuttal, the State called appellant's counsel to testify. The trial judge granted his request for a bench conference, at which the following transpired:

THE COURT: Did you tell her [Ms. Montgomery] to come yesterday?

[DEFENSE]: No. I haven't had any conversations with this woman.

THE COURT: You mean it's just pure happenstance that she's here? Did you try to—

[DEFENSE]: Judge, she asked me if I talked to her.

THE COURT: Did you try to—

[DEFENSE]: I called her,—

THE COURT: Did you try to—

[DEFENSE]: —a number I had for her mother.

THE COURT: Did you try to contact her yesterday—

[DEFENSE]: No.

THE COURT: —to make sure she'd be here today?

[DEFENSE]: No. I did not. I absolutely did not. I don't have any way of contacting her.

[STATE]: He called the mother. We took—

[DEFENSE]: I called her mother.

THE COURT: You called her mother and told her mother she was to be here today?

[DEFENSE]: No, not at all.

THE COURT: What did you tell her mother?

[DEFENSE]: I asked her mother if there was somehow I could get in touch with her. She says "No." She says, "My daughter's going to be there tomorrow."

THE COURT: So it was just—

[DEFENSE]: That's fine.

THE COURT: It was just happenstance that she happened to be here today?

[DEFENSE]: Judge, she's been here every day.

THE COURT: All right. Go back to the trial table.

After his objection to being called as a witness was overruled, defense counsel testified as follows:

Q. Now, didn't you also tell the Judge that the witness [Ms. Montgomery] that you had, the witness had been told that she probably wouldn't be needed because you didn't think that the State was going to finish their case yesterday?

A. That's correct.

 * * * * * *

Q. And, sir, hadn't you had conversation that indicated that the witness knew that she had to be here to testify on behalf of your client?

A. You're going to have to clarify that. When? When are you talking about?

Q. Yesterday at the bench conference.

A. No. When are you talking about that she was made aware that she had to be here to testify?

Q. Sir, didn't you give her name as a witness, first of all, in the voir dire when the jury—

A. That's correct.

Q. Okay. And didn't you also indicate that she was going to be your witness? Isn't' [sic] that correct?

A. That's correct. That was the purpose of giving her name to the voir dire.

Q. Okay. And you indicated that the witness had been here every day—

A. That's correct.

Q. —and then yesterday when we had a recess you tried to get in touch with the witness—

A. That's correct.

Q. —to determine whether or not she could be made available; is that correct [sic]

A. That's correct. That's when the Judge was basically forcing us to do something because he wasn't willing—

Q. Sir, that's just—

A. —to continue the case until today. That's right.

Q. Are you finished now? Did you say what you had to say so I can ask my next question?

A. Ask your next question. Get to the point.

[STATE]: Your Honor, I'm going to ask that the witness be directed—

THE WITNESS: Judge, she's asking the same questions over and over again.

THE COURT: No, just answer the question, [counsel]. All right, go ahead, [prosecutor].

BY THE STATE:

Q. And you and your client were both aware that Ms. Montgomery was needed to testify today; is that correct?

A. We were both aware that we desired her testimony, yes.

Q. And did you not talk to Ms. Montgomery to just tell her she was needed as a witness?

A. No, I did not.

Q. So you're telling me you never spoke with this witness, and you never told her that she was going to be needed, that you were going to call her in the case against your client; that's your testimony?

A. Give me a time frame. You said whether—

Q. At any time.

A. —I ever talked to her.

Q. At any time.

A. I talked to Ms. Montgomery months ago. This case has been kicked around for a year. And I talked to her once in my office.

Q. Right.

A. Maybe even a year ago. So give me a time frame.

Q. Sir, the time frame would be the time frame Ms. Montgomery gave. From the time that she was first arrested until today's date, have you ever told Ms. Montgomery that she would be necessary as a defense witness?

A. I told Ms. Montgomery we would like to have her testify.

The State then rested. During the State's closing argument, the prosecutor made no mention of defense counsel's testimony. Defense counsel's argument, however, included the following:

[The prosecutor] had an opportunity to put on a rebuttal case. Who did she put on? Me. She put me on as her rebuttal case ... She put me up there to explain why I wanted Ms. Montgomery to come in here.

I wanted Ms. Montgomery in here, quite frankly, because Ms. Montgomery didn't buy drugs from Ms. Venable. And if she had, I hazard a guess that the State would have had her up there testifying.

In rebuttal argument, the prosecutor responded:

And why did I put [defense counsel] on the stand? Because I asked the witness, I said to her, "Did you ever talk to anyone about this case?"

"I never talked to anybody. I didn't even know—I just followed this case. I was so interested in this case."

And I'm looking out in the audience now. Do you see her? Here's the most crucial part of the case, and the only reason she was ever here, because she wanted to see what

was *going* to happen. And here we are. This is the climax, ladies and gentlemen. Do you see her anywhere in the audience? She's not here. Because she wasn't here because she was interested in what was happening, she was here because the defense wanted her to testify. That's why she was here.

She lied to you. And I put [defense counsel] on because that was the only way I had of showing you at that time that she was lying.

That is a very harsh word, but it is a reality. The witness got on the stand and said, "I never talked to anybody about this case." And [defense counsel] said, "I interviewed her. It was a while ago, but I interviewed her about this case. I talked to her about what happened. And she was out there every single day."

And she said, "That's just because I was interested."

And then the defense says, "I want a postponement because I want to '—you know,' I want a continuance until tomorrow because I want her in here."

What does that say? "She's my witness." And the woman gets on the stand and expects you to believe that after she's blatantly lied to you, and a poor lie at that.

### Discussion

Appellant argues that by allowing defense counsel to be called as a State's witness, the trial judge violated (1) Rule 3.7 of the Rules of Professional Conduct and (2) appellant's constitutional right to effective assistance of counsel. We decline to hold that so doing constitutes a per se violation of either the Rule or the Constitution.

■ While this issue is of first impression in Maryland, it has arisen in other state and federal courts. We are persuaded that putting defense counsel in the position of a prosecution witness is something that "should be avoided whenever possible." *Kaeser v. State,* 96 Nev. 955, 620 P.2d 872, 874 (1980). When defense counsel is called to testify as a State's witness,

(1) it is impossible for the defendant to consult with his attorney; (2) the defendant cannot call attention to any inaccuracy in the attorney's testimony or suggest proper questions for cross-examination; (3) it is difficult, to say the least, for the lawyer, as a witness, to determine what objections should be made to questions asked him; (4) it is difficult for the lawyer to determine what questions to ask himself on cross-examination, and if he attempts to cross-examine himself the proceedings may take on a ludicrous appearance, and (5) it is difficult for the lawyer to answer questions so as to not antagonize the jury and still maintain a favorable impression.

*State v. Thomas,* 53 Or.App. 375, 631 P.2d 1387, 1390 (1981) (citing *State v. Livingston,* 30 Ohio App.2d 232, 285 N.E.2d 75 (1972) and *People v. Lathrom,* 192 Cal.App.2d 216, 13 Cal. Rptr. 325 (1961)). One court has stated that no defense counsel "could function as a persuasive advocate when he is the crucial witness against his own client." *Uptain v. United States,* 692 F.2d 8, 10 (5th Cir.1982).

Although the issue of whether a party can call opposing counsel to testify is ordinarily within the discretion of the trial judge, *Ullmann v. State,* 230 Conn. 698, 647 A.2d 324, 335 (1994), in exercising that discretion during a criminal trial the judge must weigh the materiality of defense counsel's testimony versus the defendant's constitutional rights. *Rudolph v. State,* 829 P.2d 269, 271 (Wyo.1992); *Shelton v. State,* 206 Ga.App. 579, 426 S.E.2d 69, 71 (1992); *State v. Sullivan,* 60 Wash.2d 214, 373 P.2d 474, 477 (1962).

The judge must also consider the extent to which defense counsel's credibility as an advocate will be adversely affected. It is unlikely that the jurors would accept the argument of a defense counsel whose testimony appears to lack credibility. The jurors may also be less inclined to accept the argument of a defense counsel who appears to be "bound together" with the prosecution in an "organized system of complicity." *Ullmann, supra,* 647 A.2d at 333–334. Some of these problems may be alleviated through the appointment of co-counsel for

the defendant, but that remedy is not sufficient in all circumstances. *Uptain, supra,* 692 F.2d at 10.

We hold that, whenever the prosecutor calls defense counsel to the stand, the trial judge must (1) require that the prosecutor make a detailed and complete proffer of what he or she expects defense counsel's testimony will be; (2) afford defense counsel an opportunity to respond; and (3) consider alternate methods of presenting any evidence that the prosecutor is entitled to introduce through defense counsel's testimony. If the court determines that the State is entitled to defense counsel's testimony, the court must next determine whether the defendant—not defense counsel—wants the assistance of another lawyer while defense counsel is on the stand. Had such a procedure been followed in this case, it would have revealed that the State was not entitled to put appellant's trial counsel on the stand.

## Conclusion

The trial judge erred when he permitted the State to call defense counsel as a rebuttal witness. According to the State, defense counsel's testimony was necessary to impeach Ms. Montgomery. We disagree. The State utterly failed to lay a proper foundation.

Mrs. Montgomery was not a party to this case. The prosecutor was therefore entitled to ask her whether she had ever discussed the case with defense counsel. The transcript shows, however, that Ms. Montgomery was never asked this question. If the prosecutor had asked the right question and received a "no" answer from the witness, defense counsel would have been under an ethical obligation to correct the record. *Attorney Griev. Comm'n v. Sperling,* 296 Md. 558, 563, 463 A.2d 868 (1983); *State v. Lloyd,* 48 Md.App. 535, 542, 429 A.2d 244 (1981).[1] Such a correction, however, could easily

---

1. Defense counsel's response to the defendant's false testimony is controlled by Rule 3.3(e) of the Rules of Professional Conduct.

have been made during redirect examination, without the need for defense counsel to take the stand.

In this case, the prosecutor's questions did not produce answers that required any correction by defense counsel. Instead, the State used defense counsel's testimony (1) to impeach the statements he made at a bench conference that the jurors did not hear, and (2) to suggest unfairly that the witness gave a false answer to a question that she was never asked. Such "rebuttal" was clearly improper. Appellant is entitled to a new trial.

**JUDGMENTS REVERSED; CASE REMANDED FOR A NEW TRIAL; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**