In re GRAND JURY PROCEEDINGS, DES MOINES, IOWA.

In the Matter of Martha COPLEMAN.

Appeal of Frank BLACK HORSE, Intervenor.

Appeal of WOUNDED KNEE LEGAL DEFENSE/OFFENSE COMMITTEE, Intervenor.

Nos. 76–2099 and 77–1013.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1977.

Decided Oct. 3, 1977.

Rehearing and Rehearing En Banc Denied Nov. 8, 1977.

William M. Kunstler, (argued), Center for Constitutional Rights, New York City, for appellants in Nos. 76–2099 and 77–1013 and intervenor-appellant, Frank Black Horse in No. 76–2099.

Kenneth E. Tilsen, Tilsen, Tilsen & Quick, St. Paul, Minn., for intervenor-appellant, Wounded Knee Legal Defense/Offense Committee in No. 77–1013 and on brief for appellants in Nos. 76-2099 and 77-1013.

Bruce Ellison, Rapid City, S. D., on brief for appellants in Nos. 77–2099 and 77–1013.

John M. Fitzgibbons, (argued), Asst. U. S. Atty., Des Moines, Iowa, for appellees in Nos. 76–2099 and 77–1013.

George H. Perry (former U. S. Atty.), Des Moines, Iowa, for appellee in No. 76–2099.

Paul A. Zoss (former U. S. Atty.), and James R. Rosenbaum (former U. S. Atty.), Des Moines, Iowa, for appellee in No. 77–1013.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal from an order of the district court [1] conditionally quashing the subpoena for attorney Copleman to appear before the grand jury, provided that Copleman answer written interrogatories submitted by the United States Attorney or appear in open court for questioning.[2] In addition, the American Indian Movement appeals from the district court's denial of its petition for intervention. We affirm the district court's order in its entirety.

Attorney Copleman worked on the staff of the Wounded Knee Legal Defense/Offense Committee in Nebraska, Iowa and South Dakota from January until June of 1975. On May 19, 1975, Copleman's client, Frank Black Horse, failed to appear at his trial on felony charges in the United States District Court for the Southern District of Iowa.[3] Thereafter, Copleman was subpoenaed to testify before a federal grand jury in conjunction with its investigation into the possibility that Black Horse had violated 18 U.S.C. § 3150.[4]

Copleman filed a motion to quash the subpoena on the grounds, *inter alia*, that the subpoena threatened to destroy her continuing attorney-client relationship with Black Horse and the questions to be asked did not fall within the narrow exceptions to the attorney-client privilege. On May 18,

1976, a hearing was held in the district court concerning Copleman's motion to quash. During the course of the hearing, Black Horse was allowed to intervene. With regard to the motion to quash, the district court stated:

The grand jury wishes to inquire as to communications between counsel and defendant regarding the time and place of trial to determine whether Mr. Blackhorse knew he had been ordered to appear. Ms. Copleman asserts the attorney-client privilege as the ground for quashing the subpoena.

Such communications are not of a confidential nature and are not protected by the attorney-client privilege.

In addition, the district court noted that Ms. Copleman and other interested parties had argued that the trust that had been built up between the American Indians and defense counsel would be destroyed if Copleman was required to appear and testify in secret before a grand jury. In response to this argument the district court issued the following order to avoid a secret grand jury appearance:

IT IS FURTHER ORDERED that the motion to quash the grand jury subpoena will be granted if Ms. Copleman files in this Court within 10 (ten) days after the filing of this Ruling and Order her consent to answer interrogatories or appear in open court, as she may prefer. If such consent is not filed within such 10 day

---

1. The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa. Judge Stuart stayed the enforcement of the order pending this appeal.

2. The order further provided that the petition for leave to file briefs as amici curiae was denied; the motion for disclosure of electronic or other surveillance was denied; the request for a hearing and discovery on the matter of selective enforcement was denied; and the petition for intervention of the Wounded Knee Legal Defense/Offense Committee was granted.

3. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, had transferred Black Horse's trial from South Dakota to Iowa on the basis of

convenience to the witnesses and the defendant.

4. 18 U.S.C. § 3150 states in part:

Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both * * *.

period, the motion to Quash Subpoena will be denied.

On November 30, 1976, the Wounded Knee Legal Defense/Offense Committee gave notice of an appeal from the district court's order. On December 3, 1976, Frank Black Horse likewise gave notice of an appeal. On December 8, 1976, the United States filed five interrogatories pursuant to the court's order.[5] The interrogatories, in essence, ask Copleman whether she or anyone else informed Black Horse of the date that his trial was to commence. Appellants contend that by ordering Copleman to answer the five interrogatories, the district court has invaded the attorney-client relationship. Furthermore, it is argued that before such an invasion is allowed, the government must show a compelling need for the specific information asked of attorney Copleman. We disagree.

■ Communications by a defense counsel to the client or by a client to the defense counsel regarding the time and place of trial are not confidential and therefore are not protected by the attorney-client privilege. *United States v. Freeman*, 519 F.2d 67, 68–69 (9th Cir. 1975); *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir.), *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969); *United States v. Hall*, 346 F.2d 875, 882 (2d Cir.), *cert. denied*, 382

U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965); *United States v. Woodruff*, 383 F.Supp. 696 (E.D.Pa.1974).

■ Furthermore, the government has shown an adequate need for this information. The government submitted an affidavit of Special Assistant United States Attorney Kenneth L. Fields in which he relates a conversation with either Kathy James, a legal worker, or attorney Copleman about whether Frank Black Horse would be available for trial. Either Ms. Copleman or Ms. James told Fields that Black Horse would be at trial. Although this apparent hearsay statement would be admissible before the grand jury, its admissibility in a criminal trial is of considerable doubt. The only other evidence bearing on Black Horse's knowledge of the trial date is a recorded colloquy between Judge Bogue and attorney Copleman on May 19, 1975. In that colloquy, Copleman states that she had recently spoken with Black Horse and that he did say something to indicate that he would be at trial. Copleman refused, however, to indicate exactly what was said based on her belief that it was privileged. Under these circumstances, we feel the government's need for the specific information asked of Copleman was sufficiently compelling.[6]

---

**5.** The five interrogatories read as follows:

INTERROGATORY NO. 1

Do you recall whether you or anyone else to your knowledge or belief gave Frank Leonard DeLuca, a/k/a Francis Blackhorse any information concerning the Court Order of May 2, 1975 setting the case of *United States of America v. Francis Douglas Blackhorse, a/k/a Frank Blackhorse, a/k/a Bruce John-son* for trial on May 19, 1975 at 1:00 p. m., or of the subject of that Order?

INTERROGATORY NO. 2

If the answer to Interrogatory No. 1 is yes, what information did you or anyone else give Frank Leonard DeLuca, a/k/a Francis Black-horse concerning the time and place of the trial referred to in Interrogatory No. 1, and who else, if anyone, was present at the time he received this information?

INTERROGATORY NO. 3

Did you or anyone else have any other conversations and/or communications with Frank Leonard DeLuca, a/k/a Francis Black-

horse regarding the date and/or the time of the trial referred to in Interrogatory No. 1?

INTERROGATORY NO. 4

If the answer to Interrogatory No. 3 is yes, indicate the substance of this conversation and/or these conversations as they relate to the time and place of the trial referred to in Interrogatory No. 1.

INTERROGATORY NO. 5

Do you have any information concerning whether or not anyone else informed Frank Leonard DeLuca, a/k/a Francis Blackhorse of the time and place of the trial referred to in Interrogatory No. 1, whether or not that information be hearsay in nature? What is that information?

**6.** We also note that the Assistant United States Attorney, in oral argument before this court, represented that the United States Attorney's office would not ask for an indictment from the grand jury based solely on Fields' affidavit and the recorded colloquy between Judge Bogue and Copleman.

■ Additionally, we are not persuaded by intervenor-appellant Black Horse's argument that the grand jury's subpoena of Copleman violates his Sixth Amendment right to effective assistance of counsel. Black Horse, as well as the Wounded Knee Legal Defense/Offense Committee, contend that if a lawyer can be compelled to reveal to the grand jury information the client provides the lawyer in the course of the attorney-client relationship, the right to effective assistance of counsel will be directly abridged. We think Judge Frankel has aptly appraised the matter when he said:

Lawyers, of all people, should be supposed competent to enforce in the grand jury room their legitimate duties of confidentiality. They are obliged at the same time, not less than others, to give their nonprivileged knowledge to the grand jury.

*In re a Grand Jury Subpoena Served Upon Arthur Kinoy,* 326 F.Supp. 400, 402 (S.D.N.Y.1970).

■ Finally, it appears that the interests of the American Indian Movement are adequately protected by the existing parties. *See Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). Accordingly, the district court properly denied the American Indian Movement's petition for intervention.

Affirmed.