516 So.2d 1043 (1987)
Dennis WATKINS, Appellant,
v.
STATE of Florida, Appellee.
Nos. BP-493, BP-499 and BQ-18.
District Court of Appeal of Florida, First District.
December 15, 1987.
*1044 Michael E. Allen, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
WIGGINTON, Judge.
Before us are consolidated appeals from judgments and sentences entered following jury verdicts of guilty of possession of a firearm by a convicted felon, attempted failure to appear at a jury trial, and failure to appear at a jury trial. We affirm in part and reverse in part.
The issues arise from three jury trials stemming from three separate criminal informations filed in Alachua County. By information in case 85-3363-CF, it was alleged that appellant on September 29, 1985, having been previously convicted of a felony, was in possession of a firearm. Prior to trial, defense counsel filed a motion in limine seeking to preclude the introduction at trial of evidence that appellant had failed to appear for a previously scheduled jury trial and thereby sought to preclude a jury instruction on "flight." A second motion in limine was filed regarding an attorney-client privilege grounded upon the argument that the State should not be allowed to present the testimony of Ted Curtis, appellant's former attorney, in establishing that Curtis had notified appellant of two previous trial dates and that appellant had failed to appear on both occasions. (This motion was also filed in regard to cases 86-661-CF and 86-662-CF.) The court ruled that these matters did not violate the attorney-client privilege and denied both motions in limine.
Appellant proceeded to trial, during which the following facts were adduced. The State's first witness, Peter Carbonel, testified that on September 29, 1985, while employed as a patrol officer by the Gainesville Police Department, he observed at approximately 3 a.m. a Cadillac weaving and traveling at a speed well under the limit. Carbonel followed the car for several blocks noticing that the driver, appellant, frequently turned and looked at him. After Carbonel observed further erratic driving, he decided to stop the car and radioed for a backup unit. As soon as he pulled over, appellant leaned forward and off to the right, out of Carbonel's sight. At the same time, the passenger reached in the back seat, picked up a jacket, and held it in such a fashion as to assure that Carbonel could no longer see appellant.
At approximately the same time the backup unit arrived, appellant exited the car behaving nervously, complaining about being harassed, and questioning why he had been stopped. As Carbonel approached the car, appellant followed him, arguing that he did not want Carbonel to go near the car unless he was watching. Meanwhile, officer Crase was requesting Isaac to step out of the car. Isaac quickly *1045 exited, closed the door, and leaned with his back toward the vehicle. Officer Crase pulled him away from the car, looked in, and thereafter "alerted" Carbonel telling him to frisk appellant and Isaac, one at a time, cuff them, and take them to the patrol car. While doing so, Carbonel discovered a pair of surgical gloves in appellant's pants pocket. Thereafter, Carbonel walked over to the car and observed the butt of a .45 caliber automatic weapon beneath the front seat near the right side of the transmission hump in a position next to the passenger's left foot. When questioned about the gun, appellant denied that it was his and suggested it must have belonged to Isaac.
On cross-examination, Carbonel testified that after appellant had exited the car, Isaac remained and was making furtive movements, bending down as if he were putting something under the seat.
Officer Crase's testimony generally corroborated Carbonel's. According to Crase, after Isaac was removed from the vehicle he shined a light through the windshield and observed the butt of the .45 caliber handgun. Over a relevancy objection, Crase also testified that Isaac was wearing a rolled up toboggan hat which, when unrolled, revealed two eyeholes and a mouth hole. However, although the surgical gloves had earlier been shown to the jury, the mask was not.
Nine latent prints were obtained from the gun, only one of which was suitable for comparison and matched Isaac's prints. The fingerprint expert testified that the other prints in no way indicated whether they were made by a human hand in a glove or otherwise.
Over renewed objection, attorney Ted Curtis testified that he had earlier represented appellant in this case and that trial had been set for February 17 and 18, 1986, a fact which he had communicated to appellant. Nonetheless, appellant failed to appear for trial.
Stipulation was presented to the jury to the effect that appellant had been convicted in 1976 of the offense of robbery with a firearm, after which the State rested and appellant moved for a judgment of acquittal on the ground that the State had failed to prove constructive possession of the gun. The motion was denied and the jury subsequently returned a verdict of guilty of possession of a firearm by a convicted felon as charged.
In cases 86-661-CF and 86-662-CF, by informations it was alleged that appellant on February 17, 1986, and on February 24, 1986, having been released on bail on felony charges relating to the above possession charge and one other, willfully failed to appear for jury trial proceedings contrary to section 843.15, Florida Statutes. As mentioned earlier, appellant's motion in limine regarding his attorney-client privilege was denied.
At trial, evidence was adduced establishing that appellant did not appear on the dates set forth above and that appellant had been advised of the trial dates not only by Curtis but by his bondsman. In case 86-661-CF, the jury returned a verdict finding appellant guilty of attempted failure to appear, a lesser offense. In case 86-662-CF, the jury returned a verdict finding appellant guilty as charged.
Appellant appeared for sentencing on all three cases on September 29, 1986. Numerous objections were lodged with respect to the use of appellant's presentence investigation report and the accuracy of the guidelines scoresheet. Specifically, defense counsel objected to the use of a prior conviction when it was subsequently ruled by the supreme court that no such offense existed, the use of a federal conviction, and the scoring of 24 points under legal constraint. Appellant was ultimately sentenced on the possession charge to 15 years in prison. In case 86-661-CF, he was sentenced to one year in prison to be served consecutively to the sentences in 85-3363-CF and 86-662-CF. In 86-662-CF, appellant was sentenced to five years to be served concurrently with the other sentences.
Appellant now raises four points for our consideration. They are as follow:
*1046 I. Whether the trial court erred in permitting the State to present testimony of appellant's former lawyer since his testimony was obtained in violation of the attorney-client privilege.
II. Whether the trial court erred in denying appellant's motion for a judgment of acquittal on the charge of possession of a firearm by a convicted felon since the evidence was insufficient to prove appellant was in actual or constructive possession of a firearm.
III. Whether the trial court erred in allowing the State to introduce into evidence a pair of surgical gloves and a ski mask since such evidence was not relevant to any contested issue and prejudicially suggested involvement in unrelated criminal activity.
IV. Whether the trial court erred in calculating points in appellant's sentencing guidelines scoresheet.
Under Point I, we must agree with the trial court that there was no violation of the attorney-client privilege in allowing appellant's former attorney, Ted Curtis, to testify at trial as to his communication to appellant of the trial dates. Relevant to this issue is the definition of a confidential communication in section 90.502, Florida Statutes. According to section 90.502(1)(c) "[a] communication between lawyer and client is `confidential' if it is not intended to be disclosed to third persons... ." In the instant case, we hold that an attorney's communication to his client of the trial dates is not a communication "not intended to be disclosed to third persons." As the trial court observed at the hearing below, "if the Court can't rely on communications through lawyers to tell clients when to be in court, our system, I think, will absolutely collapse." The court went on to state that in most cases the only way in which notice is given is through the client's lawyer. Accordingly, although other aspects of Curtis's communication to appellant during their conversation may have been confidential,[1] his communication to appellant of the trial dates certainly was not. Therefore, there was no error in allowing Curtis to testify in any of the three cases.
Regarding Point II, we also agree that the trial court properly denied appellant's motions for judgment of acquittal. Compare Broughton v. State, 12 FLW 2137 (Fla. 1st DCA Sept. 3, 1987).
Turning to Point III, we find there was no error in admitting the gloves into evidence as they were relevant to the issue of the lack of fingerprints on the gun. However, we have some question as to the propriety of allowing the testimony concerning the ski mask being worn by Isaac. At the time of the arrest, the mask was rolled up in a toboggan-type fashion and there was no evidence suggesting that appellant knew that the hat had eyeholes and a mouth hole. We fail to see how the hat was relevant to the issue of appellant's possessing the firearm, and any relevancy may have been outweighed by the danger of unfair prejudice insofar as the ski mask could have suggested a collateral crime. Although the State glibly maintains that the prosecutor did not make any significant argument on the issue of the hat, the record would indicate otherwise. The ski mask was mentioned three times in closing argument all in conjunction with remarks directed toward appellant's having been in possession of surgical gloves. The final remark went further and suggested that appellant must have been aware that the gun was in the car in light of the fact of "his own blood kin there wearing that getup that he had on... ." Obviously, the State was urging the jury to infer that the presence of the ski mask suggested the presence of the gun, by inferring that the ski mask suggested a crime had been or would have been committed. See Huhn v. State, 511 So.2d 583, 588 (Fla. 4th DCA 1987).
We affirm nonetheless, in light of the detail that both parties otherwise went into in describing appellant's and Isaac's apparel on the night in question, as well as in light of the other evidence tending to incriminate *1047 appellant, such as, of course, the surgical gloves. Thus, if error there was, it was harmless error.
Finally, we reach Point IV and examine appellant's sentencing guidelines scoresheet. Appellant first asserts that he was improperly scored points for a prior conviction for attempted uttering of a forged instrument, which crime was subsequently held by the supreme court to be nonexistent in King v. State, 339 So.2d 172 (Fla. 1976). Imposition of a judgment and sentence for attempted uttering is fundamental error. Ward v. State, 446 So.2d 267 (Fla. 2d DCA 1984). We agree with appellant that it was error for the court to score that prior conviction and analogize the issue to those cases wherein it was held that it is improper to enhance a subsequent sentence on the basis of a prior uncounseled misdemeanor conviction, regardless of whether that conviction was valid at the time. See Chaffin v. State, 480 So.2d 700 (Fla. 4th DCA 1985); Harrell v. State, 469 So.2d 169 (Fla. 1st DCA 1985); Allen v. State, 463 So.2d 351 (Fla. 1st DCA 1985). Accordingly, we hold that a trial court may not utilize a prior conviction in calculating a guidelines sentence which is subsequently held to be a nonexistent crime.
However, we affirm the points scored under prior record for appellant's federal conviction as it corresponds with or is analogous to section 812.014(2)(b)4., Florida Statutes  theft of a motor vehicle, a felony of the third degree. See Fla.R.Crim. P. 3.701 d.5.a(2).
We also affirm the points scored for legal constraint. Although the primary offense at conviction was the conviction under case 86-662-CF, willful failure to appear at a jury trial, that offense related to appellant's failure to appear at the February 24, 1986, trial. Thus, at the time the offense was committed, he had already failed to appear at the February 17, 1986, trial. Consequently, under rule 3.701 d.6., at the time appellant committed his primary offense, he was a fugitive who had failed to appear for a criminal judicial proceeding.
AFFIRMED in part, REVERSED in part, and REMANDED for resentencing consistent with this opinion.
BOOTH and THOMPSON, JJ., concur.
NOTES
[1] The trial court recognized as much when it would not permit inquiry into any other subjects relating to trial strategy, order of trial, or any other things "certainly confidential."