177 P.3d 783 (2008)
STATE of Washington, Respondent,
v.
Eric Patrick REGAN, Appellant.
No. 25184-5-III.
Court of Appeals of Washington, Division 3.
February 26, 2008.
*784 Carolyn Jones Fair, Law and Justice Center, Teresa Jeanne Chen, Grant County Prosecutors Office, Ephrata, WA, for Respondent.
David L. Donnan, Washington Appellate Project, Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
SCHULTHEIS, J.
¶ 1 Eric Patrick Regan was arrested for driving with a suspended license. In a search incident to arrest, police found methamphetamine, marijuana, and drug paraphernalia in the car, which belonged to Mr. Regan's girl friend. Mr. Regan was convicted of possession of the drugs, use of paraphernalia, and bail jumping. On appeal, Mr. Regan challenges the court's order that his defense counsel testify against him to prove that he knowingly failed to appear for trial. We conclude that due to defense counsel's involvement as both a witness and attorney, Mr. Regan was adversely affected by his counsel's actual conflict of interest. We therefore reverse his convictions.

FACTS
¶ 2 While stopped for a red light in downtown Moses Lake at 1:30 a.m. on September 20, 2005, city police officer Greg Nevarez recognized a driver, Eric Regan, whose license Officer Nevarez believed to be suspended. After confirming the suspension with dispatch, Officer Nevarez stopped Mr. Regan in a hospital parking lot. Officer Nevarez approached Mr. Regan and informed him that he was under arrest for driving with a suspended license.
*785 ¶ 3 Sergeant Brian Jones arrived and assisted in the search of the car incident to arrest. Beneath clothes and newspapers on the front passenger seat, he found a camera case that contained methamphetamine, marijuana, a marijuana pipe, and a methamphetamine pipe.
¶ 4 On March 8, 2006, Mr. Regan proceeded to trial on charges of possession of a controlled substance other than marijuana (methamphetamine), possession of 40 grams or less of marijuana, and use of drug paraphernalia.[1] Attorneys Elizabeth Vasiliades and Alan White appeared for Mr. Regan.[2] Ms. Vasiliades acted as primary counsel and, because it was only her second felony trial, Mr. White assisted as her supervising attorney.
¶ 5 Mr. Regan arrived for his trial more than one hour late. The trial court released the jury and issued a bench warrant for his arrest for failure to appear. The information was amended to charge Mr. Regan with bail jumping. He was detained pending trial to ensure his attendance.
¶ 6 On April 18, the court heard Mr. Regan's motion to quash a subpoena. The State wanted Mr. White to testify against Mr. Regan concerning the bail jumping charge to show that defense counsel told Mr. Regan to arrive early for court on March 8. The court held that it was not "unduly oppressive" to compel Mr. White to testify under the circumstances because Mr. White had made arrangements for another attorney to supervise Ms. Vasiliades if the trial date fell on Mr. White's vacation, so it was not necessary for Mr. White to personally supervise Ms. Vasiliades. Report of Proceedings (RP) (Apr. 18, 2006) at 9. The court continued Mr. Regan's trial, which was scheduled to start the next day, to accommodate Mr. White's vacation as well as the prosecutor's vacation. ¶ 7 When trial commenced on May 3, Mr. White again objected to having to act as a witness against his client. The judge held that he was aware of no authority that prohibited compulsion of the testimony. Concerned it might be error to have Mr. White seated at the counsel table, however, he directed Mr. White not to present argument before the jury or assist in witness examination.
¶ 8 At trial, the jury heard evidence that Mr. Regan had driven his eight-month-pregnant girl friend, Ronna Bruce, to the hospital at 8 p.m. on September 19, 2005 for treatment of a 104 degree Fahrenheit fever. He was returning to visit Ms. Bruce in the early morning of September 20 when he was pulled over. Mr. Regan testified that the car was not his but his girl friend's and claimed that he never noticed a camera case in the front passenger seat that day.
¶ 9 The State called Mr. White as part of its case in chief. After again hearing argument on Mr. White's objections to testifying, the court ruled that the communication was not privileged and ordered him to testify. Witnesses other than Mr. White testified that Mr. Regan received notice of the conditions of his release requiring his attendance at trial as well as a trial scheduling order indicating that his trial would begin on March 7, and that he was in court on March 7 for the trial readiness docket, where he was informed that trial was to begin the next morning at 9 a.m. The State also presented evidence outside of Mr. White's testimony that when Mr. Regan was not in court on March 8 at 9 a.m., that the court recessed at 9:21 a.m. to give Ms. Vasiliades a chance to locate Mr. Regan. When the court reconvened at 9:34 a.m., the judge released the jury panel and issued a bench warrant for *786 Mr. Regan's arrest before recessing at 9:49 a.m.
¶ 10 Mr. Regan presented evidence that he arrived to court and met with counsel at approximately 10 a.m. on March 8. The State presented evidence through Mr. Regan's neighbor that Mr. Regan did not leave for court until 9:15 or 9:30 a.m. on March 8, and that it is a 30-minute drive from Moses Lake to the courthouse in Ephrata.
¶ 11 The jury convicted Mr. Regan on all four counts after a two-day trial.

DISCUSSION
¶ 12 On appeal, Mr. Regan contends that his rights were denied under the Sixth Amendment, which provides a criminal defendant with the right to effective assistance of counsel at trial. U.S. Const. amend. VI. This right includes the entitlement to representation that is free from conflicts of interest. Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Dhaliwal, 150 Wash.2d 559, 566, 79 P.3d 432 (2003) (citing Wood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981)).
¶ 13 The trial court has a duty to investigate potential attorney-client conflicts of interest if it knows or reasonably should know that a potential conflict exists. Mickens v. Taylor, 535 U.S. 162, 167-72, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (citing Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Wood, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220). Reversal of a conviction is required if a defendant or his attorney makes a timely objection to a claimed conflict and the trial court fails to conduct an adequate inquiry. Holloway, 435 U.S. at 488, 98 S.Ct. 1173. But if the defendant does not make a timely objection in the trial court, a conviction will stand unless the defendant can show that his lawyer had an actual conflict that adversely affected the lawyer's performance. Cuyler, 446 U.S. at 350, 100 S.Ct. 1708; Wood, 450 U.S. at 272-74, 101 S.Ct. 1097. A harmless error analysis is not required. Holloway, 435 U.S. at 489, 98 S.Ct. 1173 (citing Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The State argues that prejudice must be shown. We disagree.
¶ 14 In Mickens, the United States Supreme Court criticized lower courts that "`unblinkingly'" applied these conflict of interest rules to "`all kinds of alleged attorney ethical conflicts,'" rather than a Strickland analysis, which requires a showing of both deficient performance and prejudice. Mickens, 535 U.S. at 174, 122 S.Ct. 1237 (quoting Beets v. Scott, 65 F.3d 1258, 1266 (5th Cir. 1995)). The Court noted that it had applied the conflict of interest rules in cases of multiple concurrent representation, but the issue of whether those rules are properly extended to other cases was, as far as the jurisprudence of the Supreme Court was concerned, an open question. Id. at 175-76, 122 S.Ct. 1237.
¶ 15 This is not an open question, however, in Washington. In In re Personal Restraint of Richardson, 100 Wash.2d 669, 675 P.2d 209 (1983), overruled on other grounds by Dhaliwal, 150 Wash.2d at 568, 79 P.3d 432, an attorney represented both a witness and the criminal defendant. The court held: "The application of these [conflict of interest] rules is not limited to joint representation of codefendants. While most of the cases have involved that fact situation, the rules apply to any situation where defense counsel represents conflicting interests." Richardson, 100 Wash.2d at 677, 675 P.2d 209 (emphasis add'ed). More recently, in State v. McDonald, 143 Wash.2d 506, 513, 22 P.3d 791 (2001), where there was a conflict of interest between a defendant and standby counsel, the court held: "These [conflict of interest] rules apply to any situation where defense counsel represents conflicting interests."
¶ 16 As to the application of the conflict of interest rules in cases where defense counsel is called as a witness, our courts have recognized that "[t]he right of the prosecutor to call defense counsel as a witness is within the broad discretion of the trial court; however, a weather eye must be kept on the constitutional rights of the defendant in a criminal trial at all times." State v. Stiltner, 61 Wash.2d 102, 104, 377 P.2d 252 (1962). *787 "There must always be a sensitive balance between the right of the state to prove its case, in the best manner possible, and the right of the accused to have unhampered and effective representation." State v. Sullivan, 60 Wash.2d 214, 221, 373 P.2d 474 (1962). Mr. Regan's Sixth Amendment claim is properly considered under the conflict of interest rules.
¶ 17 In order to establish any violation of the Sixth Amendment based on a conflict of interest, a defendant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler, 446 U.S. at 348, 100 S.Ct. 1708; Richardson, 100 Wash.2d at 677, 675 P.2d 209. If this standard is met, prejudice is presumed. Richardson, 100 Wash.2d at 677, 675 P.2d 209; Dhaliwal, 150 Wash.2d at 568, 79 P.3d 432.
¶ 18 In Dhaliwal, our Supreme Court clarified the analytical framework for determining whether counsel labored under an actual conflict of interest in violation of the Sixth Amendment. Dhaliwal, 150 Wash.2d 559, 79 P.3d 432. Notably, the "`standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect.'" Id. at 571, 79 P.3d 432 (quoting Mickens, 535 U.S. at 172 n. 5, 122 S.Ct. 1237); see also United States v. Rodrigues, 347 F.3d 818, 823 & n. 7 (9th Cir.2003) (rejecting dual inquiry). An "`actual conflict'" is "a conflict that affected counsel's performanceas opposed to a mere theoretical division of loyalties." Mickens, 535 U.S. at 171, 122 S.Ct. 1237 (emphasis omitted); see also United States v. Baker, 256 F.3d 855, 860 (9th Cir.2001) (noting that an "`attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action'") (quoting United States v. Levy, 25 F.3d 146, 155 (2d Cir.1994)).
¶ 19 In order to show adverse effect, therefore, Mr. Regan need not demonstrate prejudicethat the outcome of his trial would have been different but for the conflictbut only "`that some plausible alternative defense strategy or tactic might have been pursued' but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" United States v. Stantini, 85 F.3d 9, 16 (2d Cir.1996) (quoting Winkler v. Keane, 7 F.3d 304, 309 (2d Cir.1993)). Thus, the conflict (1) "`must cause some lapse in representation contrary to the defendant's interests,'" State v. Robinson, 79 Wash.App. 386, 395, 902 P.2d 652 (1995) (quoting Sullivan v. Cuyler, 723 F.2d 1077, 1086 (3d Cir.1983)); or (2) have "likely" affected particular aspects of counsel's advocacy on behalf of the defendant, United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir.1992).
¶ 20 Whether the circumstances demonstrate a conflict under ethical rules is a question of law, which is reviewed de novo. State v. Vicuna, 119 Wash.App. 26, 30-31, 79 P.3d 1 (2003); State v. Ramos, 83 Wash.App. 622, 629, 922 P.2d 193 (1996).
¶ 21 Here, the conflict was brought to the trial court's attention in a pretrial hearing when Ms. Vasiliades explained to the court her dilemma in agreeing to a trial continuance in order to accommodate Mr. White's vacation, which resulted in Mr. Regan's extended pretrial detention: "On the one hand my supervising attorney has a material witness warrant for him if I say that I want to go to trial this week, on the other hand, the defendant wants to go to trial and I believe he has that right." RP (Apr. 4, 2006) at 20.
¶ 22 Ms. Vasiliades ultimately agreed to the continuance, to the consternation of her client. This is a classic example of a choice between alternative courses of action that was helpful to defense counsel's own interests and harmful to Mr. Regan. And it shows an actual conflict of interest. See State v. James, 48 Wash.App. 353, 366, 739 P.2d 1161 (1987) ("`We will not find an actual conflict unless appellants can point to "specific instances in the record to suggest an actual conflict or impairment of their interests" [quoting from United States v. Fox, 613 F.2d 99, 102 (5th Cir.1980) ].'") (alteration *788 in original) (quoting United States v. Mers, 701 F.2d 1321, 1328 (11th Cir.1983)). The trial court in this case was on notice that an actual conflict of interest existed, which was adversely affecting Mr. Regan's representation.[3]
¶ 23 In Sullivan the Washington Supreme Court held that defense counsel's compelled testimony was repetitious of other testimony and unnecessary to the State's case when balanced against the need for the testimony:
If defense counsel is required to testify under compulsion, it might well be that defendant's right to complete and unhampered representation is invaded. Balanced against this, however, is the possibility that defense counsel's testimony is necessary to the state's case in the interest of justice and for the protection of the public.
Sullivan, 60 Wash.2d at 220, 373 P.2d 474.
¶ 24 The trial court in this case thought about balancing the competing interests, but ultimately decided' that the analysis was not necessary. The court stated:
Okay. Well, if I'm in error on the following proposition, then I'm in error. There's now argument that I should factor in whether there's other available witnesses and if there is not other witnesses, then maybe the attorney could be called, but if there are other witnesses, maybe the attorney shouldn't be called. I'm not sure what doctrine would provide for that sort of analysis.
RP (May 4, 2006) at 174.
¶ 25 On the contrary, Sullivan provides for, indeed compels, this analysis. Sullivan, 60 Wash.2d at 220-21, 373 P.2d 474.
¶ 26 The court's order compelling Mr. White's testimony, without seeking a waiver or making the necessary inquiry, placed defense counsel in a conflict position. Under these circumstances automatic reversal is required without a separate showing of prejudice.
¶ 27 At oral argument on appeal, the State emphasized the need for Mr. White's testimony to prove knowledge. But such emphasis on the necessity for the testimony only highlights the need for the trial court to balance the competing considerations.
¶ 28 Taking a contrary position in its briefing, the State argued that because Mr. White's testimony was uncontested and cumulative, having Mr. White testify did not interfere with Mr. Regan's defense strategy. But that is not the standard.
¶ 29 It is only when defense counsel's testimony is both necessary and unobtainable from other sources that counsel may be called as a prosecution witness. Sullivan, 60 Wash.2d at 221, 373 P.2d 474. The State failed to show any need to compel defense counsel's testimony. If it were necessary and unobtainable from other sources and the attorney's testimony would only be corroborative, the court was required to weigh the competing interests of Mr. Regan's right to complete and unhampered representation and the necessity of the testimony to the State's case in the interests of justice and for the protection of the public. Id. at 220, 373 P.2d 474.
¶ 30 Sullivan also considered the Rules of Professional Conduct. Sullivan, 60 Wash.2d at 220, 373 P.2d 474. Former RPC 3.7 (1985) provides: "A lawyer shall not act as advocate at a trial in which the lawyer . . . is likely to be a necessary witness except where: (a) The testimony relates to an issue that is either uncontested or a formality; . . . or (c) The lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate." As to subpart (a), the issue (Mr. Regan's knowledge) *789 was contested. What the prosecutor intended to imply by the uncontested fact (the substance of the communication) is an aspect not covered by the rule. "An attorney must withdraw when it is likely he or she will present testimony related to substantive contested matters." State v. Nation, 110 Wash. App. 651, 659, 41 P.3d 1204 (2002) (emphasis added). As concerns subpart (c), while the court did allow Mr. White to continue to act as an advocate, the court's ruling did not include the necessary balancing of the competing interests. Sullivan, 60 Wash.2d at 220, 373 P.2d 474.
¶ 31 Finally, the State argues that the defense waived any claim of error by Mr. White's election to continue as Ms. Vasiliades' second chair. See note 3, supra (discussing waiver). In other words, the State suggests that Mr. Regan invited the error when he could have avoided the conflict. This misses the point. Mr. White would not be placed in the position of testifying and Ms. Vasiliades would not be placed in the position of examining him had the trial court properly weighed the competing interests while it considered Mr. White's motion to quash the subpoena. See Sullivan, 60 Wash.2d at 220, 373 P.2d 474.
¶ 32 When considering the damage to the defendant's relationship with counsel, the court in Sullivan held that "[d]efense counsel's presence, as an unwilling witness for the state, rendered his services less effective and invaded the accused's right to unhampered representation at the trial." Sullivan, 60 Wash.2d at 221, 373 P.2d 474. We join other courts that have held: "We are persuaded that putting defense counsel in the position of a prosecution witness is something that `should be avoided whenever possible.'" Venable v. State, 108 Md.App. 395, 672 A.2d 123, 128 (1996) (quoting Kaeser v. State, 96 Nev. 955, 620 P.2d 872, 874 (1980)). Accord State ex rel. Sowers v. Olwell, 64 Wash.2d 828, 834, 394 P.2d 681 (1964).
¶ 33 Reversed.
I CONCUR: STEPHENS, J. Pro Tem.
SWEENEY, C.J. (dissenting).
¶ 34 I disagree with the court's disposition of this case for a number of reasons. But first of all, I am troubled that the court reverses a trial judge today on a theory the judge was not asked to pass on (deprivation of counsel in violation of the Sixth Amendment), on a citation to case authority he was not invited to consider (State v. Sullivan[1]), and based on a factual issue he was not invited to pass on (whether the testimony was necessary).
¶ 35 Eric Regan argued here in the Court of Appeals that Alan White's testimony was privileged and that requiring his lawyer, Elizabeth Vasiliades, to cross-examine Mr. White created a conflict of interest. Those are the only arguments raised and argued by the lawyers. And neither contention justifies reversal by well-established law.

FACTS
¶ 36 I "turn now to the instant case, for each case involving this problem must turn upon its own facts." State v. Stiltner, 61 Wash.2d 102, 105, 377 P.2d 252 (1962). The factual context for the judge's decision is important here.
¶ 37 The events that give rise to this appeal all took place before the jury was picked or the trial began. There was, then, ample time for Mr. Regan and his lawyer to adjust to the court's refusal to quash Mr. White's subpoena. He was not left in the lurch. Next, Mr. White was a supervising attorney here. He was not the attorney representing Mr. Regan. Indeed, he did not even file a notice of association with Ms. Vasiliades until the second day of this trial, and then only after the court asked about his role. He filed the notice of association on the day the State called him to testify, the second day of trial. Only then did he associate "as an additional attorney of record for the above named Defendant, in association with Elizabeth Vasiliades, Attorney at Law, the current attorney of record for the Defendant." Clerk's Papers at 118.
¶ 38 Finally, Mr. White's office had made arrangements with another experienced attorney, *790 Ryan Earl, to step in and supervise because of Mr. White's previously planned vacation. Why Mr. Earl did not step in is unclear from this record. But those arrangements had been previously made.

MANIFEST CONSTITUTIONAL ERROR
¶ 39 The claim of constitutional error (deprivation of counsel in violation of the Sixth Amendment) is made for the first time here sua sponte by the Court of Appeals. And so the suggestion is that we review the assignment of error in the first instance. But that requires that the error be "manifest." That means it must have practical and identifiable consequences. State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992). Here, this means that the lawyer's conflict (1) "`must cause some lapse in representation contrary to the defendant's interests,'" State v. Robinson, 79 Wash.App. 386, 395, 902 P.2d 652 (1995) (quoting Sullivan v. Cuyler, 723 F.2d 1077, 1086 (3d Cir.1983)), or (2) have "likely" affected particular aspects of counsel's advocacy on behalf of the defendant, United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir.1992). "This showing of some adverse consequence is necessary because an attorney may harbor a conflict but nevertheless provide exemplary representation." Frazer v. United States, 18 F.3d 778, 787 (9th Cir. 1994) (Beezer, J., concurring).
¶ 40 Requiring counsel to testify is not a per se violation of the defendant's Sixth Amendment right to counsel; the defendant must show some prejudice. United States v. Bergeson, 425 F.3d 1221, 1225 (9th Cir.2005). I will go on and explain why I conclude there is no error at all here. But even if there were, any claimed error certainly does not rise to the level of "manifest."

DISCRETION VESTED WITH THE TRIAL JUDGE
¶ 41 Whether to permit the State to call defense counsel as a witness is a decision vested in the discretion of the trial judge. Stiltner, 61 Wash.2d at 104, 377 P.2d 252. And whether a judge has abused his discretion by a specific ruling is best resolved by reviewing the particular facts of each case rather than general inquiry into the propriety of such decisions. Bergeson, 425 F.3d at 1225. The trial judge here had a clear understanding of the facts and Mr. Regan's objections. Trial counsel did not invite the judge to balance the factors set out in State v. Sullivan. Indeed here on appeal, very capable appellant's counsel did not assign error to the trial judge's failure to consider those factors. So I cannot conclude that the judge's failure to consider them amounted to an abuse of discretion. And I think the decision to require Mr. White to testify was correct, in any event.

QUESTION OF FACT-NECESSITY OF THE TESTIMONY
¶ 42 Evidence must be relevant to be admissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." ER 401. Whether evidence is relevant is a decision vested in the sound discretion of the trial judge and our standard of review is therefore abuse of discretion. State v. Luvene, 127 Wash.2d 690, 706-07, 903 P.2d 960 (1995).
¶ 43 Whether Mr. White's testimony was necessary, or not, is a fact-based, contextually driven determination. It is one the trial judge here did not have the chance to make because, again, no one asked him to. The State says the testimony was necessary to provebeyond a reasonable doubtthat Mr. Regan knew he was supposed to show up for trial and when. The defense says it was not necessary because other evidence was available. I do not know. And we are not in a position to pass on that contextually driven determination and, therefore, should not do so. RAP 2.5(a); State v. Metcalf, 14 Wash. App. 232, 236, 540 P.2d 459(1975). Again, this decision is vested in the discretion of the trial judge to be reviewed for abuse of discretion, including whether the court's findings for that decision were supported by the record. Luvene, 127 Wash.2d at 706-07, 903 P.2d 960.
¶ 44 Ultimately, as a court of review, we can only conclude that the evidence had a tendency to make the proposition that the State advances (that Mr. Regan knew the time he was supposed to show up) more *791 probable. For us to decide that this testimony was not necessary usurps the function of the trier of fact, here preliminarily the judge and ultimately the jury. Id.

NO RIGHT TO SPECIFIC COUNSEL
¶ 45 Essentially Mr. Regan argues that he had the right to have Mr. White, and Mr. White alone, supervise Ms. Vasiliades' handling of this case. He is not entitled to that. A defendant in a criminal case is not only not entitled to the "supervising" attorney of his choice, he is not even entitled to the primary lawyer of his choice. State v. Roberts, 142 Wash.2d 471, 515-16, 14 P.3d 713 (2000).
¶ 46 The purpose of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant. State v. Price, 126 Wash.App. 617, 631-32, 109 P.3d 27 (2005). There is no showing on this record that Mr. Regan received anything less. In any event, the court has discretion in deciding whether dissatisfaction merits substitution of counsel. The defendant does not have the right to any particular lawyer. State v. Lopez, 79 Wash. App. 755, 764, 904 P.2d 1179 (1995). There was, then, no denial of Mr. Regan's Sixth Amendment right to counsel.

STATE V. SULLIVAN
¶ 47 The majority faults the trial judge for failing to consider, failing to weigh, the Sullivan factors. Majority at 788. The judge did not do so for a good reason. No one asked him to. And, indeed, no one assigned error to the trial court's failure to consider those factors in the briefing to this court. And for good reason, no case says that these factors are either exclusive or required.
¶ 48 The facts of Sullivan are, moreover, very different than those the trial judge faced here. The defendant there went to a lawyer and apparently related the details of the murder of her husband and the disposal of his body in great, specific, and graphic detail. Sullivan, 60 Wash.2d at 216-17, 373 P.2d 474. The inescapable conclusion (and one reached by the Supreme Court) was that Ms. Sullivan had confessed the murder of her husband to the lawyer, related the details, and sought his advice. Id. at 216-22, 373 P.2d 474. To then compel him to testify to those details certainly violated the defendant's right to confidentiality of counsel. That did not happen here.

TESTIMONY BREACHED NO CLIENT CONFIDENCE
¶ 49 Simply telling a client to show up for court on time does not communicate privileged information.[2] The attorney fulfills his duty as an officer of the court and relays information that is readily available from public record. The information provided here was not privileged. United States v. Bauer, 132 F.3d 504, 508 (9th Cir.1997); United States v. Clemons, 676 F.2d 124, 125 (5th Cir.1982). Mr. White was not required to disclose confidential information. He essentially testified that he told Mr. Regan to show up for court on time, in fact to show up early. That is not a privileged communication.
¶ 50 Other evidence showed the court's orders directing the date and time of trial. The best witness to establish that Mr. Regan was listening and understood the ordersto establish the element of knowledgewas his lawyer, Ms. Vasiliades. The State opted instead to call a supervising attorneya supervising attorney who at the time the State served the subpoena was not even the counsel of record for Mr. Regan. Again, Mr. Regan was not denied his right to counsel.

*792 CONCLUSION
¶ 51 I would conclude on this record that the judge did not abuse his discretion by requiring a supervising attorney to testify. I would conclude that Mr. Regan was not denied his Sixth Amendment right to counsel. And even were I to assume constitutional error, any error is not manifest.
¶ 52 Here, there is no difficulty assessing any prejudicial effect, even assuming error, by requiring Mr. White to testify. His counsel remained Ms. Vasiliades. In Holloway v. Arkansas,[3] cited by Mr. Regan, the conflict was obvious and incurable. There was no way for the court to evaluate the prejudice to the defendants, since representation there, including advice and examination at trial, was compromised by counsel's obvious conflict of interest. Holloway, 435 U.S. at 490-91, 98 S.Ct. 1173. But that is not the case here. Mr. Regan had a lawyer. He was not deprived of full representation, including full advice and counsel and cross-examination.
¶ 53 Mr. White was not the attorney assigned to represent Mr. Regan. He was a supervising attorney. And moreover, there was another supervising counsel already available since Mr. White had a vacation scheduled during the course of the trial. The trial judge considered all of this.
¶ 54 I would affirm the conviction. And therefore I respectfully dissent.
NOTES
[1] Mr. Regan pleaded guilty to third degree driving with a suspended license. That conviction is not a part of this appeal.
[2] During oral argument on appeal, Mr. Regan's counsel mentioned that Mr. White filed a notice of appearance. The State's motion to supplement the record with Mr. White's written notice of appearance was later granted by the court, which showed this appearance was entered on May 4, 2006. An appearance in writing, however, is not required. CR 4.2(b) ("Representation of the person by the attorney at any proceeding before a judge, magistrate, or other judicial officer on behalf of the person constitutes an entry of appearance pursuant to RCW 4.28.210 and CR 4(a)(3)."). Mr. White's appearance was secured on or before March 8, 2006.
[3] Alternatively, this colloquy and others in the record could be viewed as defense counsel's acknowledgment of a conflict of interest. Trial courts may allow an attorney to proceed despite a conflict of interest "if the defendant makes a voluntary, knowing, and intelligent waiver." Garcia v. Bunnell, 33 F.3d 1193, 1195 (9th Cir. 1994). For a conflict waiver to be knowing and intelligent, the defendant must have been "`sufficiently informed of the consequences of his choice.'" Evans v. Raines, 705 F.2d 1479, 1480 (9th Cir.1983) (quoting Hodge v. United States, 414 F.2d 1040, 1042 (9th Cir.1969)). The court must "`indulge every reasonable presumption against the waiver of fundamental rights.'" United States v. Allen, 831 F.2d 1487, 1498 (9th Cir.1987) (quoting Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). Obviously, there was no waiver here.
[1] State v. Sullivan, 60 Wash.2d 214, 373 P.2d 474 (1962).
[2] United States v. Bauer, 132 F.3d 504, 508 (9th Cir.1997); Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir.1995); United States v. Clemons, 676 F.2d 124, 125 (5th Cir.1982); In re Grand Jury Proceedings, Des Moines, Iowa, 568 F.2d 555, 557 (8th Cir.1977); United States v. Uptain, 552 F.2d 1108, 1109 (5th Cir.1977); Moudy v. Superior Court, 964 P.2d 469, 472 (Alaska Ct.App.1998); State v. Davis, 98 Conn. App. 608, 634-35, 911 A.2d 753 (2006), certification granted in part, 281 Conn. 915, 917 A.2d 999 (2007); Watkins v. State, 516 So.2d 1043, 1046 (Fla.Dist.Ct.App.1987); People v. Brown, 275 Ill. App.3d 1105, 1110, 657 N.E.2d 642, 212 Ill.Dec. 441 (1995); Korif v. State, 567 N.E.2d 1146, 1148 (Ind.1991); In re Adoption of A.S.S., 21 Kan. App.2d 714, 719-21, 907 P.2d 913 (1995); State v. Hawes, 251 Neb. 305, 308-09, 556 N.W.2d 634 (1996); State v. Ogle, 297 Or. 84, 91, 682 P.2d 267 (1984); Solomon v. State, 999 S.W.2d 35, 39 (Tex.App.1999); Austin v. State, 934 S.W.2d 672, 674-75 (Tex.Crim.App.1996).
[3] Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).