IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 28618-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIBERTO GONZALEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Eriberto Gonzalez appeals his conviction for first degree murder, contending that the trial court erred when it denied his trial lawyer's motion to withdraw. Mr. Gonzalez had thrown water at his lawyer and overturned counsel's table, resulting in a physical altercation between him and his lawyer in the presence of the jury. He also argues that the trial court's instruction to the jury on how to answer a special verdict form was erroneous.

The challenge to the jury instruction fails in light of intervening, controlling authority from the Washington Supreme Court. As to the motion to withdraw, our review of the record reveals that the trial court carefully considered the trial lawyer's reasons for the motion but did so with the benefit of its own observation of the precipitating events, its knowledge of the lawyer's history with the case, and its assessment of the lawyer's

capability of continuing to effectively represent his client. We find no abuse of discretion and affirm.

## FACTS AND PROCEDURAL BACKGROUND

Eriberto Gonzalez was charged in 2007 with the first degree murder of a convenience store clerk. Adolfo Banda was appointed to serve as his lawyer. Approximately two-and-a-half years after charges were filed, the case proceeded to trial. As Mr. Banda commented to the court early on in the trial, he had by that time come to know the case intimately.

During the first several days of trial, the trial court noticed that Mr. Gonzalez was expressing disagreement or concern to Mr. Banda after Mr. Banda cross-examined State witnesses. The court inquired about it outside the presence of the jury and Mr. Gonzalez told the court he did not believe that Mr. Banda was doing a good job because he was allowing State witnesses to get away with damaging evidence. The court explained to Mr. Gonzalez that "[s]ometimes there are very significant reasons why certain material is not developed and explored. And that usually requires the—you know, the guiding hand of an experienced lawyer." Report of Proceedings (RP) at 356. The trial court later read to Mr. Gonzalez from an appellate decision explaining the responsibility of the lawyer to decide tactics to be used at trial and the need for a lawyer to exercise his or her judgment, which may mean forgoing argument on every point that may seem important to the client.

On the sixth day of what proved to be an eight-day trial, Mr. Gonzalez had a physical altercation with Mr. Banda in the presence of the jury, after which the court ordered restraints placed on Mr. Gonzalez. It entered findings and conclusions in support of its decision to restrain him. Although the decision to shackle Mr. Gonzalez is not assigned error on appeal, we reproduce the following portions of the court's findings because they reflect its observations of the event that precipitated Mr. Banda's motion to withdraw and his continuing representation.

The court found, in part:

I

The trial began on Monday, September 21, 2009. The defendant wore no restraint devices. He sat in court at counsel table beside Adolfo Banda, his lawyer, and Marlene Goodman, the defense investigator. For strategic reasons the defense team chose to sit on the side of the counsel table nearest the jury. The defendant was well behaved in the presence of the jury during the first week of trial.

II

On Monday, September 28, 2009 at 3:50 p.m., a witness, Jennifer Sharp, had just finished testifying. The defendant became upset. He threw his Styrofoam cup of water at Mr. Banda. The defendant stood up and turned over the table. Reflexively, Mr. Banda defended himself by pushing the defendant toward the jury box. The defendant banged his head on the jury box. Five officers subdued the defendant. The judge excused the jury from the courtroom.

. . . .

IV

On Tuesday, September 29, 2009, the court, out of the presence of the jury, considered whether to restrain the defendant in the presence of the jury to prevent further courtroom outbursts, to prevent escape, and protect the safety of everyone in the courtroom, including the jury. . . .

3

V

The court ruled that handcuffs and shackles would be placed on the defendant. The court asked the defendant to remain seated at all times in the jury's presence to prevent the restraints from being seen by the jury. The court advised the other trial participants to remain seated and not rise when the jury or the judge entered or exited the courtroom to prevent the restraints from becoming visible. The court moved the defense team to the opposite side of the counsel table to prevent the restraints from being seen by the jury.

. . . .

VIII

The trial resumed. The defendant was well behaved in court on Tuesday.

IX

On Wednesday, September 30, 2009, at 9:50 a.m., before the jury had been brought into the courtroom for the morning session, the defendant, who was consulting with his lawyer Mr. Banda, stood up and head butted Mr. Banda. Mr. Banda bled from over his eye. Mr. Banda assured the court that the injury was minor. Mr. Banda received medical attention.

X

The court advised the defendant that further disruptive behavior by him would lead to his removal from the courtroom and he would give up his right to be present for the remainder of the trial.

XI

The court no longer allowed Mr. Gonzalez to sit beside either Mr. Banda or Ms. Goodman. A corrections officer sat between Mr. Gonzalez and his defense team.

XII

Mr. Gonzalez's intent in misbehaving in the courtroom on September 28, 2009 and on September 30, 2009 was to undermine the trial. The court cannot allow a defendant to undermine a trial by purposefully misbehaving in the courtroom.

XII[I]

On Wednesday, October 1, 2009, the trial resumed. There was no further misbehavior by the defendant.

Clerk's Papers at 4-6.

At the commencement of proceedings the morning after the initial altercation, Mr. Banda moved to withdraw, stating he did not believe Mr. Gonzalez would receive an effective defense if he remained his attorney "given what happened and what the jury saw and the way I feel." RP at 827. Mr. Gonzalez joined in the request. The court denied the motion. It observed, as it had earlier in the trial, that it was not unusual for criminal defendants to second-guess their lawyers given what is at stake, and stated, "it seems to me that despite the friction and disagreement, that a lot of progress was made in getting through the witnesses and the evidence and that Mr. Banda was able to do what he could to work with what he had to work with. And my observation is that there's no reason at this point to stop the trial from going forward." *Id.* at 828.

Mr. Banda then moved for a mistrial. In response to that motion, the court questioned each juror individually, inquiring of each whether they were comfortable continuing to serve in light of what had happened, whether they could continue to be fair and impartial, and whether they could focus on the evidence, disregarding the prior day's scuffle. Each of the jurors responded without qualification that they wished to continue and could be fair. After completing the juror interviews, the court denied the motion for mistrial.

When the jurors returned to the courtroom, the trial court briefly discussed what had happened the prior afternoon, the assurances of impartiality it had obtained from

5

them, and some security changes that had been made in the courtroom. It also instructed

the jury that

> [w]hat happened [yesterday afternoon] and those events are not
> evidence that you are to consider in determining whether the Defendant is
> guilty of the crime. Those events that happened yesterday afternoon are
> simply some of the many events that happen in a trial and happened in this
> trial but are separate from the evidence.

RP at 860.

At the conclusion of trial the jury found Mr. Gonzalez guilty as charged. The trial

court sentenced him to 467 months' confinement, including the 120-month firearm

enhancement, and 36 months' community custody. He appeals.

## ANALYSIS

Mr. Gonzalez makes three assignments of error. The first is to the trial court's

denial of Mr. Banda's motion to withdraw. The second and third are related challenges

to the court's instruction to the jury on how to answer the firearm enhancement special

verdict form and to then imposing the sentencing enhancement on the basis of that

instruction and verdict form. We address them in that order.

I

In challenging the trial court's denial of Mr. Banda's motion to withdraw, Mr.

Gonzalez relies upon two lines of authority.

The first is case law addressing when an indigent defendant's dissatisfaction with his appointed counsel warrants substitution of counsel, since Mr. Gonzalez joined in Mr. Banda's request to terminate the attorney-client relationship.

A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997) (citing *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991)). "Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense[;] [t]he general loss of confidence or trust alone is not sufficient to substitute new counsel." *Id.* (citations omitted). Factors to be considered in a decision to grant or deny a motion to substitute counsel are (1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution upon the scheduled proceedings. *Id.* (citing *State v. Stark*, 48 Wn. App. 245, 253, 738 P.2d 684 (1987)). Whether an indigent defendant's dissatisfaction with his court appointed counsel is meritorious and justifies the appointment of new counsel is a matter within the discretion of the trial court. *State v. DeWeese*, 117 Wn.2d 369, 375-76, 816 P.2d 1 (1991).

The trial court weighed all of these factors. The third—the effect on the scheduled proceedings—strongly weighed against substitution, where the parties were nearing

7

completion of trial in a two-and-a-half-year-old case. As to the second, the trial court had previously told Mr. Gonzalez that Mr. Banda was experienced and it commented on its perception of the progress that was being made when it denied Mr. Banda's motion to withdraw. As to the first factor, Mr. Gonzalez had offered no persuasive reason for his dissatisfaction with Mr. Banda. From the complaints he expressed to the judge, it appears that Mr. Gonzalez wanted any point he perceived as operating in his favor brought up early and often, without appreciating that some points are best reserved for the right witness (e.g., a witness who will affirm the point rather than challenge it) or even for closing argument. The trial court was well within its discretion in refusing to allow Mr. Banda to withdraw on the basis of Mr. Gonzalez's dissatisfaction.

The second line of authority relied upon by Mr. Gonzalez is case law establishing that where a constitutional right to counsel exists, the Sixth Amendment provides a correlative right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). A conflict of interest exists if there is a significant risk that the representation of a client will be materially limited by a personal interest of the lawyer. RPC 1.7(a)(2). Mr. Gonzalez argues that once he attacked Mr. Banda, the lawyer had a conflict of interest by virtue of being "Gonzalez' lawyer *and* his crime victim." Br. of Appellant at 12. Whether the circumstances

8

demonstrate a conflict under ethical rules is a question of law, which is reviewed de novo. *State v. Regan*, 143 Wn. App. 419, 428, 177 P.3d 783 (2008).

"A defendant's misconduct toward his attorney does not necessarily create a conflict of interest." *State v. Fualaau*, 155 Wn. App. 347, 360, 228 P.3d 771 (2010). *Fualaau* involved facts similar to this case. During cross-examination of a witness, the defendant became increasingly agitated and the court called a recess so that the defendant and his lawyer could confer. Before the jurors could leave the courtroom, though, the defendant lunged at his attorney, grabbed him with both arms, and said something about needing his psychiatric medication. A corrections officer had to intervene and force the defendant to release his lawyer. The lawyer moved for a mistrial and to withdraw from representing his client. Both motions were denied.

Division One of this court found no conflict of interest to have been created by the defendant's assault, observing that "[o]ur Supreme Court has held that even where a defendant 'has demonstrated the possibility that his attorney was representing conflicting interests,' the defendant nevertheless 'failed to establish an actual conflict' where he did not demonstrate how his attorney's conflict of interest affected his attorney's performance at trial." *Id.* at 362 (quoting *State v. Dhaliwal*, 150 Wn.2d 559, 573, 79 P.3d 432 (2003)). Although a defendant need not demonstrate that the outcome of the trial would have been different but for the conflict, the defendant must show that some plausible alternative defense strategy or tactic might have been pursued but was not and

9

that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *Id.* (quoting *Regan*, 143 Wn. App. at 428).

Here, Mr. Gonzalez contends that Mr. Banda's representation of him suffered after the assault as evidenced by the fact that Mr. Banda did not call witnesses as planned. But the record strongly indicates otherwise. Before the assault, Mr. Banda had represented to the court that he did not anticipate calling witnesses unless needed for purposes of rebuttal. After the assault, and at the conclusion of the State's case, Mr. Banda reported to the court that based on Mr. Gonzalez's wishes, he expected the next morning to recall two witnesses and play a recording of a phone call made by Mr. Gonzalez from jail, even though he firmly believed that the evidence was damaging to the defense case. The next morning, however, Mr. Banda reported that he and Mr. Gonzalez had met with their investigator the prior evening, discussed Mr. Banda's strategy further, and Mr. Gonzalez had accepted Mr. Banda's advice. The record demonstrates, then, that Mr. Banda's strategy continued to be guided by Mr. Gonzalez's best interest.

Because Mr. Gonzalez has failed to demonstrate any actual conflict on the part of Mr. Banda, we need not reach a further point made in *Fualaau* that would appear to have equal application here: that a defendant can forfeit his Sixth Amendment right by misconduct. *Id.* at 360 (citing *State v. Mason*, 160 Wn.2d 910, 924, 162 P.3d 396 (2007)). The trial court found that Mr. Gonzalez's intent in attacking Mr. Banda had been to undermine the trial. Forfeiture by misconduct "is grounded in equity—the notion

10

that people cannot complain of the natural and generally intended consequences of their actions." *Mason*, 160 Wn.2d at 926. A defendant may forfeit rights by threatening or assaulting his or her attorney in the courtroom. *Fualaau*, 155 Wn. App. at 360 (citing *United States v. McLeod*, 53 F.3d 322, 326 (11th Cir. 1995)).

The trial court did not err or abuse its discretion in denying the motion to withdraw.

## II

Mr. Gonzalez's remaining challenges are to the trial court's instruction to the jury on how to complete the firearm enhancement special verdict form and its increase in his sentence on the basis of that instruction and form. He relies in each case on the nonunanimity rule for such verdicts articulated in *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010) and *State v. Goldberg*, 149 Wn.2d 888, 72 P.3d 1083 (2003). After Mr. Gonzalez filed his opening brief, the Washington Supreme Court overruled *Bashaw* and *Goldberg* in *State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012) on the very issue identified by Mr. Gonzalez for appeal. *Guzman Nuñez* makes clear that the trial court's instruction was correct and the firearm enhancement was properly included in determining Mr. Gonzalez's sentence.

No. 28618-5-III
*State v. Gonzalez*

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.

12